Keith W. Heard (8578)
Michael J. Walsh (6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
Tel: 212 354 3800
Fax: 212 221 1432

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SINORICHES GLOBAL LIMITED,<br><br>                                   Plaintiff,<br><br>v.<br><br>NEW OCEAN SHIPPING CO. LTD.,<br>MULTILOGISTICS SRL, and<br>ARO STEEL SRL<br><br>                                   Defendants. | 07   5779<br>05 Civ 7955 (RJH)<br><br>Electronically Filed<br><br><br><br>DECLARATION PURSUANT<br>TO 28 U.S.C. §1746 |

### DECLARATION OF SIMONE GUARDIANO

Pursuant to 28 U.S.C. §1746, I hereby declare as follows:

1.   I am a Sales Executive in the Genoa Branch Office of Multilogistic Srl, one of the defendants named in this action (sued erroneously herein as "Multilogistics Srl").

2.   I submit this Declaration in support of the Order to Show Cause, brought on by Multilogistic, for a hearing pursuant to Rule E (4)(f) of the Supplemental Rules for Admiralty or Maritime Claims. Multilogistic seeks the hearing to show why this Court's *Ex Parte* Order for Process of Attachment dated June 19, 2007, and the attachment of funds belonging to Multilogistic in the amount of $7,619, as achieved by plaintiff at Wachovia Bank on or about July 13, 2007 pursuant thereto, should not be vacated.

3. Multilogistic is organized and existing as a limited liability company under the laws of Italy. It engages in the business of freight forwarding and logistics.

4. In my role as a Sales Executive for Multilogistic, I have day-to-day responsibilities for arranging for the transportation of cargoes of clients who retain Multilogistic to provide freight forwarding services. I had such day-to-day responsibilities with respect to the freight forwarding services which are at issue in this litigation. I am thus fully familiar with the freight forwarding services rendered by Multilogistic which plaintiff's Verified Complaint has placed in issue and with the terms and conditions upon which Multilogistic rendered its services. I have been authorized to submit this Declaration pursuant to a Power of Attorney issued by Mario Marras, the Manager of the Multilogistic Genoa Branch Office who also holds the Company's Proxy. A copy of the Power of Attorney is attached hereto as Exhibit A.

5. Plaintiff has baldly alleged in Paragraph 8 of its Verified Complaint that Multilogistic was "bound by the terms and conditions" of a charter party allegedly executed on or before January 31, 2007 between plaintiff, Sinoriches Global Limited ("SGL"), and New Ocean Shipping Co. Ltd. ("New Ocean"), another defendant named in this action. Plaintiff further alleges that, pursuant to that charter party, Multilogistic is "responsible for the actions of New Ocean, and accordingly is responsible for the $706,962.0" (i.e., plaintiff's alleged claim for demurrage). Plaintiff's bare allegations are nothing more than unsupported legal conclusions. The Verified Complaint is devoid of a single factual assertion as to why Multilogistic is "bound" by an agreement to which it is not a party or why it should be "responsible for the actions" of codefendant New Ocean.

6. Multilogistic was not a party to the alleged charter party between SGL and New Ocean. In fact, Multilogistic has never even seen a copy of that charter party. Multilo-

gistic never entered or signed any agreement with Sinoriches and certainly never entered or signed a written agreement to arbitrate disputes with Sinoriches. Accordingly, Multilogistic categorically denies that it is "bound by" the charter party between Sinoriches and New Ocean or that it is "responsible" thereunder for the conduct of New Ocean.

7. Multilogistic's role with respect to M/V MICRO was limited to its performance of freight forwarding services for AroSteel, one of the other named defendants in this action. AroSteel had arranged to purchase, on an FOB stowed (free on board stowed) basis, several cargoes of steel pipe from three different Chinese manufacturers/shippers. AroSteel retained the services of Multilogistic, as a freight forwarder, to make arrangements to have the cargoes transported by a carrier from Shanghai to Genoa.

8. To satisfy its undertaking to arrange transportation for the AroSteel cargoes, Multilogistic entered an *entirely separate* contract for transportation of the cargoes by New Ocean, an entity with which it had never dealt previously. That contract between Multilogistic and New Ocean was memorialized in a "Fixture Note" which is dated January 31, 2007. A copy of the Fixture Note is attached hereto as Exhibit B.

9. Multilogistic is an entirely separate corporation from New Ocean, which is believed to be a Chinese entity. Multilogistic does not share officers, directors, employees, bank accounts or offices with New Ocean. Multilogistic does not own or control any shares of New Ocean and New Ocean does not own or control any shares of Multogistic. Multilogistic entered the Fixture Note with New Ocean at arms-length. In short, there is absolutely no reason to disregard the corporate separateness of Multilogistic to hold it liable for the contractual debts of New Ocean pursuant to a charter party to which Multilogistic is not a party.

10. Multilogistic had no direct and personal interest in the cargoes and thus in their carriage, save as freight forwarder retained by Arosteel as explained above. Multilogistic was bound by its freight forwarding agreement with AroSteel to sign the contracts necessary to carry out the instructions received from AroSteel but, as indicated above, it did so only on behalf and in the interest of Arosteel.

11. As evidenced by the Declaration of Antonio Oppicelli, an Italian attorney which is submitted concurrently herewith, under applicable Italian law, the legal obligations undertaken by Multilogistic were merely those of an agent with respect to its principal. Thus, any legal obligations with respect to the transportation of AroSteel's cargoes remain with the principal, AroSteel, rather than the agent, Multilogistic.

12. Pursuant to the Fixture Note, Multilogistic, acting as "charterer" (although solely in its capacity as the representative of AroSteel, as explained above), agreed to let space on the M/V MICRO from New Ocean, acting as "owner," for the transportation of AroSteel's cargo. The terms of the Fixture Note do not refer to the charter party between SGL and New Ocean and certainly do not refer to the arbitration or demurrage clauses allegedly contained therein which SGL now contends are binding on Multilogistic. Indeed, the Fixture Note is devoid of any indication that terms and conditions from some separate contract or document (such as the alleged charter party between SGL and New Ocean), are to be incorporated by reference into the Fixture Note.

13. As the terms of AroSteel's purchase of the steel pipe cargoes were "FOB stowed", Multilogistic played no role in loading the Vessel.

14. SGL was not a party to the Fixture Note between Multilogistic and New Ocean. At the time Multilogistic entered into the Fixture Note with New Ocean, Multilogistic was not even aware of SGL or of its alleged charter party with New Ocean. In fact, Mul-

tilogistic had never had any prior dealings with SGL at all. With respect to the use of the M/V MICRO, Multilogistic's contractual relationship was solely with New Ocean.

15. Although there is an arbitration clause in the Fixture Note, that clause – provided it is by itself valid and binding upon Multilogistic, which at present Multilogistic does not concede – constitutes at most Multilogistic's agreement to arbitrate disputes with *New Ocean*, not SGL. The arbitration clause in the alleged charter party between SGL and New Ocean, by contrast, evidences an agreement solely by New Ocean to arbitrate disputes with SGL; it can in no way bind Multilogistic, which was not party to the alleged SGL/New Ocean voyage charter party. The fact that the latter document was not shown to this Court is not a coincidence.

16. Once the AroSteel cargoes were loaded aboard the M/V MICRO in Shanghai, China, five separate bills of lading were issued. Complete copies of these five bills of lading, with the exception of Bill Number SGLSHARL05020, for which the overleaf is not available, are attached hereto as Exhibit C. From the "SGL" reference numbers at the top of each bill (i.e., SGLSHARL05001; SGLSHARL05002; SGLSHARL05003; SGLSHARL05020; and SGLSHARL05019), it is clear that SGL was acting as the carrier on these bills. Indeed, two of the bills -- SGLSHARL00501 and SGLSHARL05003 -- have the express notation that SGL acted as carrier.

17. All five bills were apparently issued by Shanghai FarEast International Shipping Agency Co., Ltd., acting as agent for the carrier, SGL. Multilogistic did not prepare or issue the bills of lading and had absolutely no role in retaining, supervising or compensating FarEast International Shipping Agency Co. Ltd. Indeed, Multilogistic did not even see the bills of lading until shortly before the cargo arrived in Genoa, when they were delivered to Multilogistic by AroSteel. AroSteel delivered the bills to Multilogistic so that

the latter could submit them to the Vessel's agent, on AroSteel's behalf, for release of the cargo.

18. The terms and conditions of the alleged charter party between SGL and New Ocean, including the arbitration and demurrage clauses which SGL now seek to impose on Multilogistic, are not incorporated by reference in any of the five bills of lading. Neither side of the four double-sided bills of lading for which there are complete copies, nor the front side of the bill for which only the face sheet is available, contain any reference at all to the charter party between SGL and New Ocean.

19. Multilogistic was, therefore, a stranger to the contract between SGL and New Ocean and cannot be bound by its terms. Acting as agent for AroSteel, and receiving the bills only shortly before the cargo arrived in Genoa, Multilogistic had no notice of the arbitration and demurrage clauses in the charter party between SGL and New Ocean. Nor was Multilogistic the recipient of any information or facts that would have put it on constructive notice of the existence of these clauses.

20. I declare, under penalty of perjury, that the foregoing is true and correct. Executed on this 9 day of August, 2007

\\Bpibm346\BP_E\CM\9011_MUL\BP_Doc\1746_Declaration_of_Multilogistic[3].doc

DECLARATION OF SIMONE GUARDIANO                                      Page 6 of 6

# MULTILOGISTIC
### Integrated Logistics & Freight Forwarders

EXHIBIT A

## TO WHOM IT MAY CONCERN

I, THE UNDERSIGNED Mario Marras, in my capacity of Manager of the Genoa Branch Office and Company Proxy of Multilogistic Srl, thus duly empowered, by the present empower Mr. Simone Guardiano who is a Sales Executive with this Company and has been from start in charge of handling the day-to-day details of arranging for the transportation for the Arosteel cargo, to sign in the name and on behalf of Multilogistic Srl, with full and complete powers, the Declaration pursuant to 28 U.S.C. § 1746 in the procedure (U.S. District Court, Southern District of New York) Sinoriches Global Ltd. v. New Ocean Shipping Co. Ltd. & Multilogistic Srl & Arosteel Srl.

Genoa, 06 August 2007
Mario Marras
(in the above capacity)




ISO 9001 / 2000    IATA

Sede Legale
Via G.B. Vico, 9
20123 Milano
Cap. Soc. Euro 600.000,00 i.v.
R.E.A. 1722364
R.I. MI 145 - 313436
C.F. e P. IVA 10435040158

Multilogistic Srl
Filiale di Genova
Via Gramsci, 9/9
16126 Genova
Tel. 39 010 8487277
Fax 39 010 8487723
E-mail: multilogistic@multilogistic.it

# FIXTURE NOTE

THE FOLLOWING SHIPMENT HAS BEEN AGREED TODAY 31^TH JAN, 2007 BETWEEN THE UNDERSIGNED PARTIES MESSRS "MULTILOGISTIC SRL" AS CHARTERERS AND MESSR " NEW OCEAN SHIPPING CO.,LTD " AS OWNER :

ACCT : MULTILOGISTIC SRL – VIA C.G.MERLO, 3 – 20122 MILAN – ITALY

OWRS: 3 UNIT NO.8 BUILDING GONG TI NAN LU CHAOYANG DISTRICT BEIJING

CGO/QTTY: ABOUT 7034MT 5PCT MORE OR LESS IN CHOPT STL PIPES IN BDLS AS PART CGO, CARGO CONSISTING OF PIPES IN BUNDLES AS DESCRIBED. FINAL QUANTITY AS PER CHTRS' FINAL PACKING LIST. CARGO DETAILS/STACKABILITY AS PER BELOW:

- 359,67 Tons / CBM 278        n.315 bundles of pipes dim.600 x 30/40 x 30/40        kos each bundle 1.141 Kos
- 1917,28 Tons / CBM 1783      n.1082 bundles of pipes dim.1200 x 20/40 x 30/45      kos each bundle 1.772 Kos
   (medium min.Kos.1600 – Max Kos. 2500 each)
- 528,35 Tons / CBM 466,11     n.227 bundles of pipes dim.1800 x 40/50 x 40/50       kos each bundle 2.500 / 3.000 Kos
- 3986,10 Tons / CBM 3084,89   n.1913 bundles of pipes dim.1200 x 20/60 x 20/40      kos each bundle 1.772 Kos
   (medium min.Kos.1600 – Max Kos. 2500 each)
- 242.6 Tons / CBM 187.77      n.116 bundles of pipes dim 1200/1800 x20/60x20/50     Kos each bundle 2000/3000 Kos

Tot.7034 Tons / CBM 5799.77 / n. 3653 bundles

**no tiers limitation, except for 359 tons (315 bundles) which to be stowed on last tier only**

MV SEA BRIDGE OR SIMILAR SUB, FULLY P&I COVERED, NOT OLDER
BLT 1977, 25.879 DWAT ON 9636 M SWAD, SIDBC
P&I AMERICAN CLUB CLASS: NKK
GRT/NRT: 15.941/8.628 LOA/BEAM/DEPTH: 172.65/25.45/13.40
TPC FULL LOAD: 37.1 MT GEAR 5 X 15 MTS DERR + 4 X 5 CBM GRABS
GRAIN/BALE CAP 1,178,320.30 / 1,122,063.49 CBFT
ALL DTLS ABT.

1. L/PORT: SHANGHAI, CHINA; NO.14 WORKING AREA CHOSEN BY OWNER
   D/PORT: 1SBP GENOA GMT(GENOA METAL TERMINAL),ITALY,CHTR'S BERTH
   THIS TERMINAL HAVE 11 M OF DRAFT, ANYHOW OWNERS TO PLS ADVISE
   SHIP'S DRAFT ON ARRIVAL DISCHPORT

2. LAYCAN: 5TH FEB – 12TH FEB, 2007

3. FREIGHT: USD76.00 PER W/M ON FIOS L/S/D BSS 1/1

4. L/S/D: L/S/D TO BE FR CHRS/SHPRS ACCT UNTILL MASTERS SATISFACTION & ARNG BUT
   ANY L/S/D BETWEEN OTHER CARGO WITH CHTR'S CARGO TO BE FOR OWNER ACCT

5. L/D RATE: CQD BENDS

6. DETENTION: USD 17000 PER DAY OR PRO RATA IF CARGO AND/OR DOCUMENTS NOT
   READY AT BOTH ENDS. AND ANY TIME LOST FOR WAITING GENOA METAL BERTH AS

DETENTION AND DETENTION CLAUSE TO APPLY – TIME LOST WAITING FOR BERTH AT LOADING TO BE PER OWNER'S ACCOUNT

7. FRT PAYMENT: FULL FREIGHT PAYABLE AS PER ACTUAL LOADED QTY SHOWN ON BS/L AND/OR PACKING LIST TO BE PAID IN U.S.DOLLARS TO OWNER'S NOMINATED BANK ACCOUNT W/N 5 BANKING DAYS ACOL BS/L MARKED"FRT PAYABLE AS PER C/P", FULL FRT DEEMED AS EARNED, DISCOUNTLESS, NON-RETURNABLE WHETHER CGO A/O VSL LOST OR NOT LOST.

8. STOWAGE: CGO TO BE STOWED UNDER DECK. ESPECIALLY, 359.67MT HEXAGONAL PIPES MUST BE UNSTACKABLE ON THE TOP OF ALL CGO.CGO SOULD BE STOWED AWAY FM FERTILIZERS, ACID AND OTHER CORROSIVE CHEMICAL COMPOUNDS WCH CAUSED OXIDATION

9. INSPECTION: CHRS/SHPRS OR CHEIR AGNT/REPRESENTATIVE HV RIGHTS TO GO ON BOARD THE VSL FR INSPECTION THE CGO

10. AGENT: OWRS AGNTS BENDS

11. TALLY FEE: SHIPSIDE TALLY TO BE FOR OWS ACCT AND SHORESIDE TALLY TO BE FOR CHTRS ACCT.

12. TAXES/DUES: ANY TAXES/DUES/WHARFAGES ON CGO TBF THE CHTRS ACCT, THE SAME ON VSL/FRT TO BE FOR OWS ACCT

13. B(S)/L: OWRS SHUD ISSUE CLEAN ON BOARD B/L AGAINST SHPRS /RECEEIVER/ CHRS SIGNING L.O.I IN OWNRS WORDING IN CASE NOMAL REMARKS INSERTED IN THE MAET'S RECEIPT; IN CASE VSL ARV AT L/PORT AFTR CANCELLG DATE, OWRS SHUD AGREE TO BACK DATE THE B/L AGAINST CHARTERER'S LOI

14. OWNERS TO GIVE 5 DAYS FINAL NOTICE OF ARRIVAL LOADPORT TO CHARTS+AGENTS OWNERS/MASTER TO GIVE 7+5+3 DAYS PRELIMINARY AND 48+24 HRS FINAL NOTICES OF SHIP'S ARRIVAL DISCHPORT TO CHARTS+AGENTS

15. SHIFTG: SHIFTING CHARGE IF ANY TO BE FR OWRS ACCT AT LOADING AND CHTR ACCT AT DISCHARGING PORT

16. ARBITRATION: IF ANY DISPUTES ARISING FM THIS AGREEMENT SHUD BE SUBMITTED TO ARBOTRATION IN LONDON ACDG TO ENGLISH LOW ARBI RULES

17. OWNER PROVIDE PRE-STOWAGE PLAN TO CHTR BEFORE LOADING

18. OWNER PROVIDE COPY OF SHIP'S P&I + CLASS + ISPS CERTIFICATES WHEN NOMIATE PERFORMING VESSEL.

19. OTHERS AS PER GENCON 94

END

| FOR AND ON BEHALF OF CHTR | FOR AND ON BEHALF OF OWNER |
|---|---|
| MULTILOGISTIC SRL. | NEW OCEAN SHIPPING CO.,LTD |
| *MULTILOGISTIC s.r.l.* | .................................... |

EXHIBIT C

CODE NAME: "CONEGENBILL" EDITION 1994

**Shipper**
WUXI WEIPU STEEL TUBE CO., LTD.
NO.10, HENGOU RD, HENGYUANXIANG QIANQIAO TOWN, WUXI CITY CHINA

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

B/L No: SGLSHABL05001
Reference No.

Carrier: SINORICHES GLOBAL LTD.

**Consignee**
TO THE ORDER OF BANCA POPOLARE DELL EMILIA ROMAGNA

**Notify address**
ARO STEEL S.R.L.
VIA CECATI 3  42100 REGGIO EMILIA ITALY

**Vessel**: MICRO V.RL05
**Port of loading**: SHANGHAI PORT, CHINA
**Port of discharge**: GENOVA, ITALY
GENOVA, ITALY

**Shipper's description of goods**
N/M

1070 BUNDLES    1915.753MTS  1800.23CBM

STEEL PIPE

CLEAN ON BOARD
28 FEB 2007

(Of which ........... on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

**Freight payable as per CHARTER-PARTY dated**

**FREIGHT ADVANCE.**
Received on account of freight:

**Time used for loading** ........... hours.

**SHIPPED** at the Port of loading in apparent good order and condition on board the Vessel for carriage to the port of Discharge or so near thereto as she may safely get the goods specified above.
Weight, measure, quality, quantity, condition, contents and value Unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

**Freight payable at**
FREIGHT COLLECT

**Number of original Bs/L**

**Place and date of issue**

**Signature**

上海远东环球国际船舶代理有限公司
SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO., LTD.

28 FEB 2007
GENERAL MANAGER
AS AGENT FOR THE ABOVE NAMED CARRIER

Printed and sold by
Fr. G. Knudzons Bogtrykkeri A/S, 55 Toldbodgade, Dk-1253 Copenhagen k.
Telefax 45 33 93 1184
by authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

BILL OF LADING
TO BE USED WITH CHARTER PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
   (a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
   (b) Trades where Hague-Visby Rules apply.
   In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.
   (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
Destination, etc., See overleaf.

CODE NAME: "CONEGENBILL" EDITION 1994

| Shipper | |
|---|---|
| JIANGSU YULONG STEEL PIPE CO.LTD<br>NO.5,YULONG RD,YUQI,WUXI,<br>JIANGSU,214183 P.R.CHINA | **BILL OF LADING**<br>TO BE USED WITH CHARTER-PARTIES<br>B/L No. SGLSHARL05002<br>Reference No. |

Consignee
TO THE ORDER

Notify address
ARO STEEL SRL
VIA CECATI N.3
42100 REGGIO EMILIA(RE)

| Vessel | Port of loading |
|---|---|
| MICRO V.RL05 | SHANGHAI PORT, CHINA |
| Port of discharge | |
| GENOVA PORT, ITALY | GENOVA PORT, ITALY |

Shipper's description of goods: 1211 BUNDLES

PRIME QUALITY NEWLY PRODUCED SELF
COLOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED
HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE
EUROPEAN STANDARD SPECIFICATION EN 10219

CLEAN ON BOARD 28 FEB 2007
L/C NO:CRED1521114

N/M

Gross weight: 2469020KGS

ORIGINAL

FREIGHT PAYABLE AT DESTINATION

SAY ONE THOUSAND TWO HUNDRED AND ELEVEN BUNDLES ONLY
(Of which ____ on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per CHARTER-PARTY dated ____

FREIGHT ADVANCE.
Received on account of freight ____

Time used for loading ____ days ____ hours.

**SHIPPED** at the Port of loading in apparent good order and condition on board the Vessel for carriage to the port of Discharge or so near thereto as she may safely get the goods specified above. Weight, measure, quality, quantity, condition, contents and value Unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| | SHANGHAI 28 FEB 2007 |
| Number of original Bs/L | Signature |
| THREE | 上海远东环球国际船舶代理有限公司<br>SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO., LTD.<br><br>28 FEB 2007<br>GENERAL MANAGER<br>AS AGENT FOR THE ABOVE NAMED CARRIER |

Printed and sold by
Fr. G. Knudzons Bogtrykkeri A/S, 55 Toldbodgade, Dk-1253 Copenhagen k.
Teletac 45 33 93 1184
by authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

BILL OF LADING
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
   (a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
   (b) Trades where Hague-Visby Rules apply.
   In trades where the international Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968-the Hague-Visby Rules-apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.
   (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight, Destination, etc., See overleaf.

CODE NAME: "CONGENBILL", EDITION 1994

| Shipper | |
|---|---|
| SHANGHAI SUN METAL PRODUCTS CO., LTD. | **BILL OF LADING** |
| N.299 ZHANG LIAN TANG ROAD, LIAN INDUSTRIAL PARK QING PU DISTRICT | TO BE USED WITH CHARTER-PARTIES |
| SHANGHAI 201746 CHINA | Reference No. SGLSHARL05003 |
| | B/L No. |

CARRIER: SINORICHES GLOBAL LTD.

**Consignee**
THE ORDER

**Notify address**
ARO STEEL S.R.L. VIA CECATI, N. 3
42100 REGGIO EMILIA (RE)

**Vessel:** MICRO V.RL05   **Port of loading:** SHANGHAI, CHINA

**Port of discharge:** GENOVA

**ORIGINAL**

**Shipper's description of goods**                        **Gross weight**

SHANGHAI/SMP-AROSTEEL
O/N26/007/06-S235JR         315 BUNDLES                    359.670 MT
CAST NUMBER
SIZExLENGTH                 PRIME QUALITY NEWLY
NUMBER OF                   PRODUCED GALVANISED
TUBES                       TUBES, PRODUCED FROM HOT-DIP
BUNDLE WEIGHT               GALVANISED STRIP, IN QUALITY
EN10219                     S235JR TO EN 10219 PARTS 1 AND 2

**ON BOARD 28 FEB 2007**

FREIGHT PAYABLE AT DESTINATION

SAY THREE HUNDRED FIFTEEN BUNDLES ONLY

(of which            on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| Freight payable as per CHARTER-PARTY dated_____ | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge of so near thereto as she may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE. Received on account of freight: | Weight, measure, quality, quantity, condition, contents and value unknown. IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Time used for loading ____ days ____ hours | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue SHANGHAI |
|---|---|
| Number of original B/L THREE | Signature 上海远东环球国际船舶代理有限公司 SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO., LTD. 28 FEB 2007 GENERAL MANAGER AS AGENT FOR THE ABOVE NAMED CARRIER |

C.15 Printed and sold by
Witherby & Company Limited, 32/36 Aylesbury Street,
London EC1R 0ET.
Tel. No. 0171 251 5341 FAX No. 0171 251 1296
by authority of the Baltic and International Maritime Council
(BIMCO) Copenhagen.

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
  (a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
  (b) Trades where Hague-Visby Rules apply.
  In trades where the International Brussels Convention 1924 as legislation amended by the Protocol signed Lading at Brussels on February 23rd 1968-the Hague-Visby Rules apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.
  (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight, destination, etc., see overleaf.



AROSTEEL s.r.l

MULTILOGISTIC s.r.l

CODE NAME: "CONEGENBILL" EDITION 1994

| Shipper | BILL OF LADING | B/L No SGLSHARL05020 |
|---|---|---|
| JIANGSU YULONG STEEL PIPE CO.LTD<br>NO.5,YULONG RD,YUQI,WUXI,<br>JIANGSU,214183 P.R.CHINA | TO BE USED WITH CHARTER-PARTIES | Reference No. |

Consignee

TO THE ORDER

Notify address

ARO STEEL SRL
VIA CECATI N.3
42100 REGGIO EMILIA(RE)

| Vessel | Port of loading |
|---|---|
| MICRO  V.RL05 | SHANGHAI PORT,CHINA |

| Port of discharge | |
|---|---|
| GENOVA PORT,ITALY | GENOVA PORT,ITALY |

Shipper's description of goods

677BUNDLES

PRIME QUALITY NEWLY PRODUCED SELF
COLOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED
HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE
EUROPEAN STANDARD SPECIFICATION EN 10219

CLEAN ON BOARD  28 FEB 2007
L/C NO:CRED1521113

N/M

Gross weight
1362314KGS

ORIGINAL

FREIGHT PAYABLE AT DESTINATION

SAY SIX HUNDRED AND SEVENTY SEVEN BUNDLES ONLY
(of which          on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY dated..................

FREIGHT ADVANCE.
Received on account of freight:

Time used for loading ................days ................ hours.

SHIPPED at the Port of loading in apparent good order and
condition on board the Vessel for carriage to the port
of Discharge or so near thereto as she may safely get the goods specified
above.
Weight, measure, quality, quantity, condition, contents and value
Unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed
the number of Bills of Lading indicated below all of this tenor and date,
any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| | SHANGHAI  28 FEB 2007 |
| Number of original Bs/L | Signature |
| THREE | 上海远东环球国际船舶代理有限公司<br>SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO., LTD.<br><br>28 FEB 2007<br>GENERAL MANAGER<br>AS AGENT FOR THE ABOVE NAMED CARRIER |

Printed and sold by
Fr. G. Knudzons Bogtrykkeri A/S, 55 Toldbodgade, Dk-1253 Copenhagen k,
Telefac 45 33 93 1184
by authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

CODE NAME: "CONEGENBILL" EDITION 1994

| Shipper<br>JIANGSU YULONG STEEL PIPE CO.LTD<br>NO.5, YULONG RD, YUQI, WUXI,<br>JIANGSU, 214183 P.R.CHINA | BILL OF LADING<br>TO BE USED WITH CHARTER-PARTIES | B/L No. SGLSHARL05019<br>Reference No. |
|---|---|---|

Consignee
TO THE ORDER

Notify address
ARO STEEL SRL
VIA CECATI N.3
42100 REGGIO EMILIA(RE)

| Vessel<br>MICRO V.RL05 | Port of loading<br>SHANGHAI PORT, CHINA | |
|---|---|---|
| Port of discharge<br>GENOVA PORT, ITALY | GENOVA PORT, ITALY | ORIGINAL |

Shipper's description of goods                488BUNDLES               Gross weight
PRIME QUALITY NEWLY PRODUCED SELF                                      1005300KGS
COLOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED
HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE
EUROPEAN STANDARD SPECIFICATION EN 10219

CLEAN ON BOARD **27 FEB 2007**
L/C NO:411831163120

N/M

FREIGHT PAYABLE AT DESTINATION

SAY FOUR HUNDRED AND EIGHTY EIGHT BUNDLES ONLY
(Of which                       on deck at Shipper's risk: the Carrier not
being responsible for loss or damage howsoever arising)

| Freight payable as per<br>CHARTER-PARTY dated............................ | **SHIPPED** at the Port of loading in apparent good order and condition on board the Vessel for carriage to the port of Discharge or so near thereto as she may safely get the goods specified above.<br>Weight, measure, quality, quantity, condition, contents and value Unknown.<br>IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
|---|---|
| FREIGHT ADVANCE.<br>Received on account of freight: | |
| Time used for loading ........... days ........... hours. | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue<br>SHANGHAI **27 FEB 2007** |
|---|---|
| Number of original Bs/L<br>THREE | Signature<br>上海远东环球国际船舶代理有限公司<br>SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO., LTD.<br>27 FEB 2007<br>GENERAL MANAGER<br>AS AGENT FOR THE ABOVE NAMED CARRIER |

Printed and sold by
Fr. G. Knudzons Bogtrykkeri A/S, 55 Toldbodgade, Dk-1253 Copenhagen k.
Teletac 45 33 93 1184
by authority of The Baltic and International Maritime Council
(BIMCO), Copenhagen.

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

**(1)** All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

**(2) General Paramount Clause.**
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
(b) Trades where Hague-Visby Rules apply.
In trades where the international Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968-the Hague-Visby Rules-apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.
(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

**(3) General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

**(4) New Jason Clause.**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, Salvage shall be paid for as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
Destination, etc., See overleaf.