**Bennett, Giuliano, McDonnell & Perrone, LLP**
**Attorneys for Plaintiff Sinoriches Global Limited**
**225 West 34th Street, Suite 402**
**New York, New York 10122**
**Telephone:    (646) 329-0120**
**Facsimile:    (646) 328-0121**
**William R. Bennett, III  (WB 1383)**
**wbennett@bgmplaw.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

SINORICHES GLOBAL LIMITED,                      07-CIV-5779

               Plaintiff,

    - against -

NEW OCEAN SHIPPING CO., LTD.,
MULTILOGISTICS SRL, and
ARO STEEL SRL,

               Defendants.

------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT MULTILOGISTICS SRL'S
## MOTION TO VACATE THE RULE B ATTACHMENT


### INTRODUCTION

      Plaintiff, Sinoriches Global Limited ("Sinoriches" or "Plaintiff") by and through its undersigned counsel, Bennett, Giuliano, McDonnell & Perrone, LLP, respectfully submits this Memorandum of Law in Opposition to Defendant's, Multilogistic SRL, Motion to Vacate the maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Defendants' Motion to

2

Vacate should be denied because Plaintiff has sustained its burden that it has a maritime claim against defendant Multilogistic and that the requirements of Rule B have been met.

The Second Circuit Court of Appeals has ruled that it is improper for a court to engage in a fact intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 2006 U.S. App. LEXIS 19302, at *35 (2d Cir. 2006). Despite the ruling in *Aqua Stoli,* defendant Multilogistic is, in fact, requesting that the court engage in a fact intensive inquiry.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment and garnishment as against defendant Multilogistic are more fully set forth in the accompanying Declaration of William R. Bennett, III dated August 14, 2007 (hereinafter "Bennett Decl."). The facts stated in the Declaration are incorporated by reference herein. In addition, this Memorandum of Law will make reference to, and discuss as necessary the facts set forth in the Declaration.

## ARGUMENT

### POINT 1

### PLAINTIFF HAS SUSTAINED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

**A. Plaintiff need only establish that it has met the four technical requirements of Rule B in order to satisfy its burden at the Rule E(4)(f) post-attachment hearing**

Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam*." *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.,* 759 F.2d 262 (2d Cir. 1985). Quasi in rem process can be used to attach or garnish a

wide variety of tangible and intangible property. Rules B(1) and B(3) permit attachment of "virtually all tangible property. . . In addition to tangible property, service of quasi in rem process can also be used to reach a variety of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705 Moore's Federal Practice – Civil § 705.04.* A party may attach the funds used to pay a debt that is owed or will be owed to a defendant and the court may require such person to pay the debt to the attaching party upon maturity. *See Iran Express Lines v. Sumatrop; A.G.*, 563 F.2d 648 (4th Cir. 1977).

Under Supplemental Rule B, "an order of maritime attachment must issue upon a minimal prima facie showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached. Under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules. It is clear from the text of Rule E(4)(f) that the party having obtained the maritime attachment bears the burden of showing that the attachment should not be vacated, however, as recently confirmed by the Second Circuit Court of Appeals in *Aqua Stoli,* the Rule(e)(4)(f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of Rule B were met. Thus, as long as the plaintiff establishes that it has alleged (1) a prima facie maritime claim, (2) the defendant is not present in the district, (3) the defendant's property has been restrained in the district, and (4) no other statutory bar to the attachment exists, the attachment must be upheld. *See Aqua Stoli*, 2006 U.S. App. LEXIS 19302, at *28-29; *see also Order in Tide Line, Inc. v. Eastrade Commodities, Inc. and Transcler, S.A.*, 06 Civ. 1979 (KMW) *annexed hereto as Exhibit "1" at 16.*

4

Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited bases for vacatur. *Aqua Stoli* provides that an otherwise facially valid Rule B attachment may only be vacated upon three bases. *See Aqua Stoli*, at *27. Here, defendant has not shown that any of the *Aqua Stoli* bases for vacatur exist in this case, *i.e.,* defendant has not alleged that it is subject to suit in an adjacent jurisdiction, defendant does not allege that Plaintiff could obtain *in personam* jurisdiction over the defendant in the district, and defendant has not shown that Plaintiff has otherwise obtained sufficient security.

In *Tide Line*, Judge Wood held that in light of the *Aqua Stoli* decision, the court should exercise a very limited inquiry into the underlying factual allegations made in the complaint. Judge Wood reasoned that when applying for a Rule B attachment, a plaintiff need not provide any supporting evidence; its complaint should suffice. In keeping with this principal, she held that *Aqua Stoli* implies that a plaintiff *is likewise not required to provide evidence showing that it has a claim against defendant*, to carry its burden under Supplemental (E)(4)(f) at the post-attachment hearing. *See Tide Line Order, annexed hereto as Exhibit "1" at 13.* Allegations that a claim exists suffice.

Judge Wood noted that "in seeking to have an attachment vacated, a defendant may argue that a plaintiff does not have a "valid prima facie admiralty claim against the defendant." However, she further clarified that such a challenge must be based on *insufficiency of pleading. See Tide Line Order, supra, at 17* ("it does not appear that the basis of defendant's argument may be that plaintiff has not provided sufficient evidence of such a claim"). Thus, the only way for a defendant to show that a plaintiff does not have a maritime claim is to prove that the pleadings themselves are insufficient to state such a claim.

As indicated above, the Second Circuit Court of Appeals held in *Aqua Stoli* that it is *inappropriate* for a court to conduct a fact-intensive inquiry regarding the specifics of a plaintiff's claim at a post-attachment hearing. Rule E(4)(f) does not afford a defendant the opportunity to challenge the sufficiency of the evidence supporting plaintiff's claim. A defendant may, if it wishes, raise such issues by way of a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment but it may not do so in the context of an emergency hearing pursuant to Supplement Rule E(4)(f). *Maersk, Inv .v. Neewra, Inc.*, 2006 U.S. Dist. LEXIS 53395 (S.D.N.Y. 2006) (refusing to apply the higher pleading standard used in a motion to dismiss in a post-attachment hearing "lest Rule 12(b)(6) be completely subsumed by Supplement Rule E(4)(f)").

Defendant's request that the Plaintiff "show cause" pursuant to Rule E(4)(f), why the Rule B attachment should not be vacated. This motion/hearing must only address the Defendants' motion to vacate under Rule E(4)(f).[1] Thus, the limited question presented to the Court is, "has Plaintiff adequately <u>pled</u> an admiralty claim against the defendant?" The answer is an unqualified yes.

Plaintiff has met its pleading burden under the Supplemental Admiralty Rules. Plaintiff has properly alleged a maritime claim against the defendant Multilogistic. *See the Verified Complaint annexed to the Bennett Dec. as Exhibit A* Plaintiff alleged in its Verified Complaint, this Memorandum, and the accompanying Declaration of William R. Bennett that defendant Multilogistic is liable because it breached a maritime contract. Particularly, Plaintiff made the following allegations in the Verified Complaint:

\*     \*     \*

---

[1] Defendants moved <u>ex parte</u> to vacate the attachment. The undersigned's first notice of the motion was on Monday, August 13th when counsel for defendant advised that the Court wished to conduct a hearing. Prior notice of the motion was required since there is no provision in Rule E which permits the defendant to move <u>ex parte</u>.

6.    On or before 31 January 2007, SGL and NEW OCEAN entered into a maritime contract, commonly referred to as a charter party, for the employment of the vessel, M/V MICRO.

7.    Under the terms and conditions of the charterparty NEW OCEAN was responsible for freight, demurrage and other costs.  NEW OCEAN incurred demurrage totaling $706,962.00.

8.    At all times relevant herein, defendant MULTILOGISTICS was bound by the terms and conditions of the charterparty and responsible for the actions of NEW OCEAN, and accordingly is responsible for the $706,962.00.

*      *      *

*See Verified Complaint annexed to Bennett Dec. as Exhibit "A."*

Plaintiff has more than sufficiently alleged a valid *prima facie* maritime claim against defendant Multilogistic.  In addition to the pleadings, defendant Multilogistic has admitted that it was a charterer of the subject vessel.  In fact, Multilogistic paid Sinoriches' freight bill. (Bennett Decl. at ¶ 10).

The factual dispute as to which defendant is responsible for the payment of demurrage is not to be analyzed at this stage.

In conclusion, Plaintiff has shown by way of its Verified Complaint, this Memorandum, and the accompanying Declaration that it has a valid *prima facie* maritime claim against Multilogistic.  Multilogistic does not contest its lack of presence in this District or the attachment of its property in the form of EFTs in the District.  *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002.)  Additionally, defendant has failed to cite any statutory or maritime law

7

bar to the attachment. The Convention on the Recognition and Enforcement of Foreign Arbitration Award has no affect on Rule B attachment. *Construction Exporting Enterprises, Uneca v. Nikki Maritime Ltd.*, 558 F.Supp. 1372 (D.C.N.Y., 1983). In fact, Defendant, who has the burden of proof on establishing an exception to void a Rule B attachment, has not cited to a single case that held a Rule B attachment is in contravention to the Convention.

This Court's issuance of the maritime attachment pursuant to Rule B was proper. The insistence by Multilogistic that the Plaintiff prove its case at the emergency post-attachment Rule E(4)(f) hearing is not based on current case law and is in disregard of the purpose of the emergency Rule E(4)(f) hearing. Based on all the foregoing, defendants' motion to vacate the attachment must be denied and this case should be allowed to proceed in the normal course, with the attachment remaining in place for the reasons set forth below.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Court deny Defendants' Motion to Vacate in all respects and grant such other and further relief as the Court deems necessary and appropriate.

Dated: New York, New York
        August 14, 2007

                            Bennett, Giuliano, McDonnell & Perrone, LLP
                            Attorneys for Plaintiff Sinoriches Global Limited


                            William R. Bennett, III
                            225 West 34th Street, Suite 402
                            New York, New York 10122
                            Telephone:    (646) 328-0120

8

cc:    Michael Walsh
       Burke & Parsons
       100 Park Avenue
       New York, New York 10017
       Fax: 212.221.1432

Z:\Documents\All Files\D670/Pleadings\MOLOppDefMotVac-081407.doc

# EXHIBIT 1

1

69TVROUA                    Argument
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROUTE HOLDING INC., BEAM
COMPANY INC.,

                  Plaintiffs,

          v.                        06 CV 03428 (PKC)

INTERNATIONAL OIL OVERSEAS
INC. a/k/a IOOI, MARINA WORLD
SHIPPING CORP.,

                  Defendants.

------------------------------x
                                  New York, N.Y.
                                  September 29, 2006
                                  11:30 a.m.

Before:

                    HON. P. KEVIN CASTEL,

                                  District Judge

                        APPEARANCES

TISDALE & LENNON LLC
      Attorneys for Plaintiffs
NANCY R. PETERSON
PATRICK F. LENNON

FREEHILL HOGAN & MAHAR LLP
      Attorneys for Defendants
MICHAEL E. UNGER
LAWRENCE J. KAHN

                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

2

69TVROUA                    Argument

1           (In open court)
2           (Case called)
3           THE COURT:  This is Route Holding, Inc. v.
4  International Oil Overseas, Inc.
5           Is the plaintiff ready?
6           MS. PETERSON:  Yes, your Honor.
7           THE COURT:  State your appearance please.
8           MS. PETERSON:  My name is Nancy Peterson from the firm
9  Tisdale & Lennon, representing the plaintiffs Route Holding and
10 Beam Company.
11          THE COURT:  All right.  And for the defendant?
12          MR. UNGER:  Good morning, your Honor.  Michael Unger
13 from Freehill, Hogan & Mahar on behalf of the defendant Marina
14 World Shipping.  With me is my associate Larry Kahn.
15          THE COURT:  Good to see you.  Good to see you again,
16 Mr. Kahn.
17          MR. KAHN:  Good morning, your Honor.
18          THE COURT:  Good morning.  All right.  We are here on
19 the defendant's motion to vacate the maritime attachment.
20 Since the issuance of the maritime attachment in this case, we
21 now all have the benefit of the Second Circuit's decision in
22 Aqua Stoli, 460 F.3d 434, and also Judge Wood's very clear and
23 helpful decision in Tide Line, Inc. against the Eastrade
24 Commodities, Inc., and Transclear, S.A.  That was an opinion
25 issued by Judge Wood on August 15 -- I'm sorry, August 5th,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

3

69TVROUA                         Argument
1   2006; docket number is 06 CV 1979. And as of seven minutes
2   ago, it had not yet appeared on Westlaw.
3       It does seem clear to me that we know what we're doing
4   here this morning in that the attachment was issued pursuant to
5   Supplemental Rule B.
6       We're now at the hearing under Rule E(4)(f), and it is
7   the party who obtained the ex parte attachment's burden to show
8   why the arrest or attachment should not be vacated or other
9   relief granted consistent with these rules. So the party
10  obtaining the attachment may proceed.
11      MS. PETERSON: Your Honor, Aqua Stoli set forth the
12  burden that plaintiff needs to satisfy in order to maintain the
13  attachment.
14      In order for Rule B attachment to issue, a plaintiff
15  must show that it has met the following four technical
16  requirements:
17      That it has alleged a maritime claim; that the
18  defendant is not found in the district; that the plaintiff has
19  attached defendant's funds within the district; and that no
20  other statutory bar to maritime attachment exists.
21      In addition, Aqua Stoli stands for the proposition
22  that the plaintiff's burden does not change at the Rule E
23  hearing. The burden to obtain an attachment is the same as the
24  burden to maintain an attachment. Judge Wood further clarifies
25  that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

69TVROUA                        Argument

1        THE COURT:  Well, let's back up for a second.  I'm not
2   sure that I agree with your statement of what Aqua Stoli held.
3   If you look at -- well, I'm not going to be able to give you an
4   exact page number; I don't have an F.3d version of it.  But the
5   text preceding Footnote 5, it recites that the plaintiff has to
6   show that it "has," not alleges, has a valid prima facie
7   admiralty claim against the defendant.  That's slightly
8   different than -- and maybe more than slightly different than
9   alleges a claim.
10       MS. PETERSON:  Right.  But Judge Wood clarifies in her
11  opinion that what having a prima facie claim amounts to is
12  properly alleging the elements of a maritime claim, and then an
13  alter ego claim.
14       She expressly stated that it is inappropriate to
15  engage in a fact-intensive inquiry as to the facts underlying
16  either the maritime claim or the alter ego allegations.
17       THE COURT:  But she points out that there is a
18  heightened pleading standard in a case brought, I guess
19  invoking maritime or admiralty jurisdiction, is that correct?
20       MS. PETERSON:  The heightened standard is to make the
21  defendant aware what he is pleading.
22       In the case of Tide Line, there was no alter ego
23  allegation made.  The only allegation that was made was that
24  the defendant was a paying agent of the interconnected entity.
25       In the case here, the plaintiff has alleged all the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

69TVROUA                          Argument

1  elements of federal common-law alter ego claim; namely, that
2  IOOI is an alter ego of Marina World Shipping; and that IOOI
3  dominates and controls Marina World Shipping to the extent that
4  it actually conducts business through Marina World Shipping.
5  It's completely separate factual -- it's distinguishable from
6  that case.
7           After we had satisfied our burden, the defendant has
8  three basis upon which it can vacate the attachment according
9  to Aqua Stoli; namely, that the defendant can be found in a
10 convenient adjacent jurisdiction that the defendant can obtain
11 personal jurisdiction in a district where the plaintiff is
12 located or that the plaintiff has obtained sufficient security.
13          Aqua Stoli explicitly listed the three bases upon
14 which the defendant may vacate an attachment.  It left the door
15 open for some equitable concerns; however, those equitable
16 concerns are not here today.  Defendant is a debtor who's not
17 paying its debts.  And if our case is borne out, as we suggest
18 it will be, it will turn out that IOOI and Marina World
19 Shipping are the same company who are avoiding paying their
20 debts to the plaintiffs.
21          Defendant is relying on outdated case law when it
22 suggests that we must prove a probable cause or a reasonable
23 basis, reasonable grounds standard for making our alter ego
24 allegations.  Once we have satisfied the basic elements of a
25 maritime claim and an alter ego claim, we have satisfied our

6

69TVROUA                        Argument
1    burden in that regard.
2          Plaintiff has alleged a maritime claim against IOOI
3    that it has breached the maritime contract, and it has alleged
4    the alter ego claim against Marina World Shipping.
5    Furthermore, in subsequent submissions, we have submitted a
6    raft of evidence showing a relationship between IOOI and Marina
7    World Shipping, which, according to both Judge Casey, in the
8    recent case of Maersk v. Neewra, is you can review in order to
9    determine if we had made adequate allegations.  In addition,
10   Judge Kaplan, in a recent case of Metalinvest v. Burwil
11   Resources also held that you review the entire record to
12   determine if we have met our basic pleading allegations.
13         As the plaintiff has satisfied its burden to show that
14   it has a prima facie claim, and defendant has not met its
15   burden to show the three reasons for vacatur, the attachment
16   should be upheld and the motion to vacate denied.
17         THE COURT:  Thank you, Ms. Peterson.  Let me hear from
18   Mr. Unger.
19         MR. UNGER:  Good morning, your Honor.  Let me begin by
20   referring the Court to the advisory committee notes of Rule B.
21   Under those notes, it says contrary to whatever interpretation
22   plaintiffs want to put on Aqua Stoli, the defendant can attack
23   the pleadings for insufficiency or any other defect in terms of
24   the process.
25         Here, the defect is that the complaint is plainly
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

69TVROUA                    Argument

1    insufficient to meet the standards required under Rule 8(a),
2    let alone the higher standard required under Rule 9(b).
3           The case law is such, and, in particular, I refer the
4    Court to In Re:  Currency Conversion Fee Anti --
5           THE COURT:  If I may just have you pause for a second.
6    Why do you invoke Rule 9(b)?
7           MR. UNGER:  Rule 9(b) is the specificity of pleading
8    rule, your Honor.
9           THE COURT:  I'm familiar with that.
10          MR. UNGER:  And here, the courts have said that
11   veil-piercing claims are generally subject to the pleading
12   requirements imposed by Rule 8(a), which requires only a short
13   and plain statement of the claim, showing that the pleader is
14   entitled to relief.
15          However, when a veil-piercing claim is based on
16   allegations of fraud, the heightened pleading standard Rule B
17   is the lens through which those allegations have to be
18   examined.  Okay.
19          Here, they haven't alleged fraud.
20          THE COURT:  So that goes back to my question.  Why are
21   you talking to me about Rule 9(b)?
22          MR. UNGER:  I just refer to Rule 9(b), but what I'm
23   saying is it doesn't even reach the lower standard of Rule 8.
24          THE COURT:  But we're in agreement Rule 9(b) does not
25   control in this case?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

69TVROUA                    Argument

1         MR. UNGER:  That's correct, your Honor.
2         THE COURT:  Okay.  Thank you.
3         MR. UNGER:  I apologize if it was confusing.  But the
4    case I was referring to, In Re:  Currency Conversion Fee
5    Antitrust Litigation, which is 265 F. Supp. 2d 385 Second
6    Circuit -- I'm sorry, Southern District 2003.
7         The Court stated in that case that purely conclusory
8    allegations cannot suffice to state a claim based on veil
9    piercing or alter ego liability, even under the liberal notice
10   pleading standard under Rule 8(a).
11        The plaintiff has to come in, and the plaintiff has to
12   demonstrate with proof, credible proof, that there is an alter
13   ego relationship between the two defendants that they've named.
14   Plaintiff only has a real cause of action and a real gripe with
15   IOOI with whom it had its contract, because IOOI didn't pay up
16   or hasn't agreed to post security, and I don't know exactly
17   where plaintiff and IOOI are in terms of their arbitration.
18        Plaintiff in this action decided that they were going
19   to come into court and add MWS, Marina World, as a defendant,
20   and that's a tactic that they are using in order to try to
21   strongarm either a settlement or the posting of security by
22   IOOI in connection with the London arbitration and the merits
23   of that dispute.
24        Turning back to the Aqua Stoli case.  It's incorrect
25   to say that there were only three bases on which to challenge
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

9

69TVROUA                        Argument

1   an attachment.  The Second Circuit specifically said in Aqua
2   Stoli that among the bases to challenge are, and it proceeds to
3   list the three examples that counsel for the plaintiff cited.
4           THE COURT:  And then they go on to further define the
5   universe by saying, "We also believe vacatur is appropriate in
6   other limited circumstances," which are well-described in the
7   opinion.  And they also describe what circumstances do not
8   qualify for vacating the attachment.  Go ahead.
9           MR. UNGER:  Here, your Honor, what we're challenging,
10  effectively, is that there is no maritime claim.  And,
11  therefore, the Court lacks subject-matter jurisdiction in
12  respect to the claims against Marina World.  And the reason the
13  Court lacks subject-matter jurisdiction is because there is no
14  alter-ego relationship between the two named defendants.
15          THE COURT:  Where do I find your subject-matter
16  jurisdiction argument laid out?
17          MR. UNGER:  It's not specifically set forth as such in
18  our papers, your Honor; but what we do argue is that there is a
19  defect in the pleadings.  And that's the defect.  The defect is
20  that there is a lack of jurisdiction here.  And there's a lack
21  of jurisdiction because there is no, in fact, alter-ego
22  relationship between the companies; and there is no -- the way
23  that it's pled in the complaint, that doesn't suffice under
24  Rule 8(a) to state a maritime claim.
25          The Aqua Stoli case says, in effect, that plaintiff

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69TVROUA                    Argument

1  has to show that it has a valid maritime claim, okay. And if
2  that's the case, you're allowed to test the validity of whether
3  that claim that they are alleging is valid.
4      Here, this Court has the right to look at the
5  evidence. And plaintiff having the burden of proof, they
6  haven't shown a maritime claim against Marina World. And the
7  reason they haven't is that the evidence that they have put
8  forth, and let's look at what they put forth, before they ever
9  filed the claim, all they knew was there were a couple of
10  payments that had been made over eight years by Marina World on
11  behalf of IOOI. And Mr. Bakri from Marina World explains in
12  his several declarations why that was done. That's been
13  unchallenged. And I don't believe that that gave a good-faith
14  basis to file this complaint in the first place.
15      But even if you get past that and you look at the rest
16  of the evidence, what do we have? A couple more payments we
17  learn have been made. But that's it. Then you get into all
18  the plaintiff's smoke-and-mirrors in terms of trying to tie
19  Marina World and IOOI together. And, quite frankly, your
20  Honor, they don't even come close.
21      The evidence that they show at best is based on
22  speculation, rumor, innuendo, hearsay from unnamed "market
23  sources" and investigations that were commenced. They give you
24  a four-year old report in connection with IOOI and its supposed
25  relationship with the Bakri group, which Mr. Bakri explains is

69TVROUA                    Argument

1   basically a loose association of companies that try to
2   capitalize on the goodwill of one another.
3           You have, in addition to that, plaintiff coming in
4   with all kinds of suggestions in terms of the fact that there
5   are shared addresses, IT information that's shared.  None of
6   this adds up to putting Marina World being so dominated or
7   controlled by IOOI or the converse, that they can meet the
8   ten-point tests that are set out in terms of what you have to
9   show in order to have an alter-ego claim.
10          At best, all plaintiff has done is shown, if you want
11  to accept it, that IOOI may have some kind of relationship with
12  the Bakri group, Bakri navigation, and any of the 12 or 13
13  other companies that are named throughout the course of the
14  papers.  But what's not in any of that is Marina World in this
15  web that they've painted.  Marina World is out here.  And
16  there's no evidence which ties Marina World directly to IOOI,
17  or to IOOI through the Bakri group, or any of the Bakri group
18  companies.
19          Effectively, if you follow plaintiff's argument, up on
20  the west side of Manhattan you have the Potamkin Auto Group.
21  And he's got ten different dealerships.  And if I buy a
22  Chrysler from Potamkin Chrysler, and I don't like it, under
23  plaintiff's theory, I could allege that their alter egos and go
24  after Potamkin Chevy.  Why?  Because Mr. Potamkin has his hand
25  in a whole bunch of these dealerships.  Mr. Potamkin may own

12

69TVROUA                        Argument

1   the various buildings or have a company that owns the various
2   buildings the dealerships are in.. That doesn't get you over
3   the hump.
4           There's no good-faith basis to have brought this
5   claim.  And they haven't shown it even when they've had the
6   burden of showing it, that there is an alter ego relationship.
7           Thank you, your Honor.
8           THE COURT:  Thank you, Mr. Unger.  Let me hear from
9   the plaintiff.  And I guess a question I would like answered is
10  does supplemental Rule E(2)(a) apply as to the pleading.  And
11  let me hear as to how does the plaintiff view that rule as
12  affecting its pleading obligation here.
13          MS. PETERSON:  What do you explicitly mean by Rule
14  E(2)(a)?  Do you mean the pleading requirement?
15          THE COURT:  All right.  There is a requirement that,
16  "The complaint state the circumstances from which the claim
17  arises with such particularity that the defendant or claimant
18  will be able, without moving for a more definite statement, to
19  commence an investigation of the facts and to frame a
20  responsive pleading."
21          And Second Circuit has held that this standard is more
22  stringent than the pleading requirements of the Federal Rules
23  of Civil Procedure.  That's what I'm referring to.
24          MS. PETERSON:  Your Honor, first, I believe that we
25  have satisfied that burden; and that we have stated the facts

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

69TVROUA                    Argument

1   and circumstances for having the breach of the contract and the
2   reasons behind us attaching the funds of Marina World Shipping;
3   namely, that they are in an alter ego relationship such that we
4   do not have to move for a more definite statement.
5          And, subsequently, we have submitted considerable
6   evidence in our various submissions and declarations clarifying
7   our pleadings and putting forth more evidence.
8          In addition, I don't believe that the standard -- that
9   we should apply a motion-to-dismiss standard at the Rule E
10  hearing. We're not judging the sufficiency of the pleadings in
11  terms of a motion to dismiss any set of facts upon which relief
12  can be granted. We're looking at a Rule E special hearing at
13  which we're seeing if the elements of the claim have been
14  alleged, and if the circumstances has also been alleged,
15  according to Rule B(a)(2).
16         Judge Casey explicitly addressed this in the case of
17  Maersk v. Neewra, where he said you can look at the entire
18  record to determine a pleading burden, unlike a motion to
19  dismiss; and that if we were to apply any set of facts or look
20  at the facts, Rule E would completely subsume Rule 12(b)(6).
21  There would be no difference, included there should be a
22  difference in the standard.
23         If the defendants would like to challenge the facts
24  underlying our pleadings, they should raise a motion to dismiss
25  or a motion for summary judgment. However, that is the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

69TVROUA                    Argument

1  appropriate form in which to challenge them.  Right now we're
2  looking at the bare bones of the complaint and our supplemental
3  submissions.
4          May I add a few -- address their argument?
5          First of all, as to the subject-matter jurisdiction
6  argument that they have made, the defendant does not dispute
7  that we have alleged a maritime claim against IOOI.  We have
8  alleged an alter-ego claim against Marina World Shipping.
9  Therefore, it's an alter-ego maritime claim.  In the
10 subject-matter jurisdiction, it's not relevant and wasn't
11 briefed by the defendants.
12         THE COURT:  In other words, what you're saying is even
13 if for some reason I accepted everything that the defendants
14 said and tomorrow granted a motion to dismiss Marina World from
15 this case, this Court's subject-matter jurisdiction would not
16 evaporate?
17         MS. PETERSON:  Exactly.
18         THE COURT:  Thank you.  Go ahead.
19         MS. PETERSON:  As to the evidence, where they are
20 attacking the evidence as hearsay and in the declarations, they
21 are holding us to a trial standard.  This is the Rule E
22 hearing.  You can submit any sort of evidence at this stage to
23 support your allegations.  And we can submit case law to
24 support that, if your Honor would like.
25         In addition, there is no case law to suggest that we

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

69TVROUA                    Argument

1   have to submit proof at this stage of the hearing to support
2   our allegations. Aqua Stoli and Judge Wood found that proof at
3   this stage is inappropriate; and that would be going directly
4   against her decision, I feel, to require to submit all facts at
5   this stage prior to discovery or being able to use discovery
6   tools to obtain evidence.
7        And even assuming arguendo that the defendants are
8   correct that we have to make some sort of evidentiary showing,
9   which we vigorously deny, we have shown significant evidence
10  that IOOI and Marina World Shipping are, in fact, alter egos.
11       Even without the benefit of discovery, we have
12  uncovered 15 payments being made by Marina World Shipping on
13  behalf of IOOI. There's been no evidence submitted to show
14  that there was -- Mr. Bakri claims that there's an assignment
15  of payment. However, there's absolutely no paper, there's no
16  evidence of a debt being assumed from Marina World Shipping to
17  IOOI, there's no evidence of an assignment actually being made,
18  and the people that received the payments can confirm that they
19  were never informed of an assignment. The only evidence is a
20  self-serving statement that a payment assignment can be made.
21       And it suspends disbelief to believe that in these 15
22  separate incidences that we know about, they executed
23  assignments of payment. In addition, IOOI refers to Marina
24  World Shipping's account as its own. In the two instances
25  where IOOI owed money to a creditor, and it informed them that

69TVROUA                    Argument

1    it would be sending money from its bank, when the confirmation
2    came through, it was from Marina World Shipping.  It is
3    referring to Marina Shipping as its own account and using it as
4    its piggy bank.  Its role is to sign the maritime documents;
5    Marina World Shipping's job is to pay the debts.  And in this
6    way, it completely insulates IOOI and the Bakri family-at-large
7    from liability.
8         IOOI and Marina World Shipping reside at the same
9    location in Saudi Arabia at the Al Dulas Bakri Building owned
10   by a Bakri corporation.  Mr. Bakri has submitted a lease
11   allegedly showing that this is an arm's length transaction that
12   Marina World Shipping leases from the owner.  However, this
13   lease does not specify an office, a floor.  This is a lease
14   that specifies that they have leased somewhere in the Bakri
15   building.  This has no evidence to show that, in fact, they
16   maintain a separate office or in any way separate from IOOI.
17        In addition, the directors of IOOI are all apparently
18   employed by the Bakri family.  Marina World Shipping directors
19   are made up of all Bakri family members.  IOOI's directors are
20   all apparently employees of the Bakri corporations.  One is in
21   the legal department of a Bakri-owned corporation; one is a
22   member of and works for a self-described company in the Bakri
23   organization; and the other one works in another separate
24   subsidiary of a Bakri corporation.  There's clear ties between
25   these directors.

17

69TVROUA                    Argument

1          Marina World Shipping and IOOI are one entity; the two
2     pockets in the same pair of pants.
3          The maritime report, which defendants claim is four
4     years old -- which is four years old, but which is equally
5     relevant today, shows that the Bakri family uses IOOI as their
6     chartering arm.  They use it to enter into transactions.  And,
7     as I said, Marina World Shipping is the piggy bank.  They are
8     almost like two departments; they are the same company.
9          And, finally, the audit that Mr. Bakri submitted
10    allegedly to show that it has above-the-board records, reveals
11    that it enters into related party transactions regarding ship
12    charters.  What these transactions are, I am unsure.  However,
13    upon a minimal amount of discovery, I believe we can find out.
14    However, this in no way establishes that they are separate from
15    IOOI.
16          And, in addition, again, upon a minimal amount of
17    discovery, we believe we can uncover many more payments made on
18    behalf of Marina World Shipping -- made on behalf of IOOI by
19    Marina World Shipping.
20          The owners in this case have approached people in
21    order to find out about more payments; however, they came to
22    them and said we have a confidentiality clause in our charter
23    party.  So they couldn't help even if they wanted to.  Upon
24    being awarded discovery, we can certainly clarify how often
25    Marina World Shipping is certainly paying on behalf of IOOI.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

18

69TVROUA                      Argument

1         And, as such, I believe plaintiff has met its burden,
2    either under the defendant's alleged pleading requirements or
3    under whatever Judge Wood's pleading requirements in Tide Line.
4    And for that reason, the attachment should be upheld.
5         THE COURT:  Thank you.  It is the plaintiff's burden,
6    and so the plaintiff gets to go first and last; but, Mr. Unger,
7    I'll give you an opportunity briefly if there's something
8    additional you wanted to say.
9         MR. UNGER:  A couple real quick points, your Honor.
10   We're back to the has versus alleges argument in looking at
11   what they talked about.  The evidence, it doesn't have to be
12   admissible at this stage, but it has to be credible.  And it
13   has to support the allegations.  And, quite frankly, the
14   evidence that they have does neither.
15        The allegation that Marina World hasn't supplied any
16   paper to document the assignments, it's not Marina World who
17   has the burden of proof, it's the plaintiff.  And it was never
18   challenged by the plaintiffs, okay.  The fact that IOOI says we
19   have instructed our bankers, I don't know why, but it certainly
20   is not compelling evidence that there is an alter-ego
21   relationship.  And, in fact, the argument that Marina World is
22   used as IOOI's bank is undermined by the fact that IOOI paid
23   the settlement in the prior case, the Garda Shipping case,
24   which is referred to in the papers, out of its own funds.
25   They're holding the lease to U.S. standards rather than Saudi
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

69TVROUA                    Argument
1   standards; yet they don't have any evidence to show you what
2   the practice is in terms of Saudi leasing of offices.
3   Mr. Bakri is the only evidence that is before the Court, and
4   Mr. Bakri explains what happens.  Okay.
5           They never closed the circle between IOOI, the Bakri
6   group, and Marina World.  The four-year old report is not
7   relevant.
8           In terms of any suggestion as to discovery, discovery
9   has never been asked for prior to today, and it shouldn't be.
10  In terms of the suggestion that the motion should be held only
11  in terms of a summary judgment standard, basically that allows
12  the plaintiff then in any instance, with even the barest
13  whisper of a connection between two companies, to say, A is the
14  alter ego of B; and that alleged alter ego can't challenge it
15  until it's gone through miles and miles of legal hoops and
16  legal proceedings, effectively all the way to trial.
17          If Marina World had not challenged the money being
18  attached in this instance, look at what would have happened.
19  Plaintiff would have had to get a judgment -- I'm sorry, an
20  award in London against IOOI, and then seek to confirm that
21  award.  And then plaintiff would still have the burden of
22  proving down the road that IOOI and MWS are alter egos in order
23  to go ahead and collect a judgment here against MWS.
24          So it goes beyond the realm of common sense to say
25  that they shouldn't have to have that ability to go ahead at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69TVROUA                     Argument

1   this early stage and have some credible evidence that the two
2   are linked in order to have taken the step that they have done.
3               MR. KAHN:  Your Honor, if I could be heard on just one
4   brief point brought up by plaintiffs regarding the Maersk v.
5   Neewra case, which was recently decided by Judge Casey, and the
6   dismissal standard that we're also seeking here.
7               As Mr. Unger said, the Court would still have
8   jurisdiction over the case generally, but only against IOOI if
9   the case is dismissed against Marina World.
10              And what occurred in the Maersk v. Neewra case, if you
11  look at it carefully, you'll see that the plaintiffs are
12  expanding what was actually said in that case.  In the Maersk
13  v. Neewra case, what happened was the defendant moved to vacate
14  the attachment on maritime attachment grounds, and then also
15  sought to dismiss a RICO cause of action on the grounds that it
16  was not sufficiently pled.  And the Court held that it was
17  improper at that time to attack the RICO cause of action in an
18  E(4)(f) hearing.  The Court found that there was no basis to do
19  that, particularly where the defendant had not yet appeared.
20              One slightly complicating wrinkle in that case was
21  that the defendant, who appeared only in the guise of garnishee
22  and not as the defendant, it was proven at the E(4)(f) hearing
23  that the garnishee actually was the defendant.  He was playing
24  a name game; he had essentially multiple IDs with slightly
25  different spellings of his name.  And Judge Casey saw through

21

69TVROUA                    Argument

1    that and saw this is all the same person.

2        But with respect to the standard for dismissal, Judge
3    Casey held that what was going on in that case was that it was
4    improper in the context of an E(4)(f) maritime hearing
5    concerning whether or not an attachment should be vacated to
6    challenge whether a RICO cause of action was sufficiently pled
7    under 9(b).

8        And so the reading urged by the plaintiffs here I
9    think is over-expansive, goes well beyond what Judge Casey
10   actually decided in the Maersk v. Neewra matter.

11       Thank you.

12       THE COURT:  Thank you.  On May 4th, 2006, I signed an
13   order directing the clerk to issue maritime attachment against
14   property of IGOI and Marina World.  Thereafter, I scheduled an
15   initial pretrial conference in this case, and had a conference
16   held on July 14th.  The defendant indicated a desire to move to
17   vacate the attachment, and I set a schedule for the motion to
18   be made four days later, set a date for replies, responses and
19   replies, and set a date for a hearing of August 1, 2006.

20       And there is certainly nothing unusual or
21   inappropriate about it, but I do want to make it plain for the
22   record, subsequently I received requests to adjourn the
23   hearing, including a letter request by Mr. Unger dated July
24   31st, which caused me to move it till August 28th.  And then a
25   further request from Ms. Peterson that it be adjourned to a

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

22

69TVROUA                    Argument

1   later date, and it was moved to today.  So that's what brings
2   us here today.
3            This is the hearing required under Rule E(4)(f) of the
4   supplemental rules for certain admiralty and maritime claims.
5   And the rule provides that whenever property is arrested or
6   attached, any person claiming an interest in it shall be
7   entitled to a prompt hearing at which the plaintiff shall be
8   required to show why the arrest or attachment should not be
9   vacated, or other relief granted consistent with these rules.
10           In the very recent decision of the Second Circuit in
11  Aqua Stoli, which is 2006 Westlaw, 2129336, and that is now
12  recorded at 460 F.3d 434 Second Circuit, July 31, 2006, the
13  Court had occasion to examine the historical underpinnings of
14  maritime attachment and the process by which maritime
15  attachment may be vacated.
16           I have spent some time with that opinion in examining
17  it, studying it, and I'm not going to endeavor to summarize it
18  here today.  But I do note that the holding of the Court is
19  that in addition to having to meet the filing and service
20  requirements of Rule B and E, an attachment should issue if the
21  plaintiff shows that, one, it has a valid prima facie admiralty
22  claim against the defendant; two, the defendant cannot be found
23  within the district; three, the defendant's property may be
24  found within the district; and, four, there is no statutory or
25  maritime law bar to the attachment.

23

69TVROUA                        Argument
1           And conversely says, Aqua Stoli, a district court must
2    vacate an attachment if the plaintiff fails to sustain his
3    burden of showing that he has satisfied the requirements of
4    Rule B and E.
5           The Court also outlined certain other limited
6    circumstances which do not appear to be relevant here.
7    Specifically, it outlined a circumstance where the defendant is
8    subject to suit in a "convenient adjacent jurisdiction, and
9    where the plaintiff could obtain in personam jurisdiction over
10   the defendant in the district where the plaintiff is located,
11   or the plaintiff has already obtained sufficient security for
12   the potential judgment by attachment or otherwise."
13          Those circumstances, i.e., the limited circumstances,
14   have no application in this case.
15          I conclude that the plaintiff has met the requirement
16   that the defendant cannot be found within the district; that
17   the defendant's property may be found within the district; and
18   that there is no statutory or maritime law bar to the
19   attachment. I consider, however, whether a valid prima facie
20   admiralty claim against the defendant has been asserted.
21          Now, there is much discussion, and I suppose it will
22   be a continuing discussion, as to how a district court is to
23   determine whether there is a valid prima facie admiralty claim.
24   I think it is fair to say that after Aqua Stoli, it cannot
25   credibly be argued that there is a probability of success on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

24

69TVROUA                    · Argument

1    the merits type standard.  But I really don't, in this case,
2    have to spend too much time with whether it is something to be
3    determined solely from the face of the pleadings or whether
4    this Court can and should consider matters outside the four
5    corners of the pleading, because under either standard, I find
6    that the plaintiff has alleged a valid prima facie admiralty
7    claim.
8            I'm mindful of the dictates of supplemental Rule
9    E(2)(a), that there must be at least enough particularity so
10   that the plaintiff -- or, rather, the defendant can commence an
11   investigation of the facts and frame a responsive pleading; and
12   that this is a higher pleading requirement than the Rule 8(a)
13   requirement.
14           Here, the plaintiff alleges that MWS is the alter ego
15   of IOOI, but it does not simply leave it as a conclusory
16   allegation.  It goes on to allege that the reason it believes
17   it is the alter ego is because IOOI dominates and disregards
18   MWS's corporate form to the extent that MWS is actually
19   carrying on IOOI's business and operations as if the same were
20   its own.  It further goes on to allege that MWS, acting as
21   paying agent, acts as paying agent or arranges for other
22   nonparties to satisfy the debts and obligations of IOOI.
23           It seems to me that is a sufficient allegation.  If
24   and to the extent it is not a sufficient allegation, I look to
25   the declaration of Hara Anastasatou.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69TVROUA                    Argument

```
 1          Now, the declaration referenced goes into the issue of
 2   common ownership and control, alleging that the two are a
 3   single economic entity.  Some of the facts that are set forth
 4   there are consistent with alter ego, but they could also be
 5   consistent with one shareholder owning two separate
 6   corporations.  There's nothing in law that prohibits a single
 7   shareholder from doing business through separate corporations,
 8   provided the separate corporate form is maintained.
 9          But what I find impressive about the declaration is it
10   gives considerable particularity and description to instances
11   where MWS made a payment on behalf of IOOI, it gives chapter
12   and verse, it gives the details, it gives the time, the place,
13   and the circumstances, and it gives a number of examples.  And
14   so I find paragraphs 20 through 43 of the declaration to be of
15   particular help and utility.
16          The prerequisites for piercing the corporate veil are
17   as clear in federal maritime law as in shoreside law.  That's a
18   point that has been made in the Kirno Hill case; and it's clear
19   that the veil will be pierced only if a corporation is used by
20   another entity or individual to perpetrate a fraud or, the
21   operative word being "or," was so dominated that its corporate
22   form was disregarded and the notion that a way to prove veil
23   piercing is by showing that the alleged alter ego so dominated
24   and disregarded its alter ego's corporate form, that the alter
25   ego is actually carrying on the controlling party's business
```

26

69TVROUA                          Argument

1    instead of its own, is an extremely well-recognized,
2    well-established means of demonstrating corporate veil
3    piercing.
4            I look specifically to pages 25 to 27 of Judge Wood's
5    well-reasoned and thoughtful opinion in Tide Line, including
6    the citation up to the factors outlined in William Passalacqua
7    Builders v. Resnick.
8            Unlike Tide Line, of course, this is a case where the
9    alter ego allegation is on the face of the complaint.  Whether
10   I look at it in terms of the complaint or I look at it in terms
11   of the complaint taking into account the plaintiff's
12   submissions, as well as the defendant's submissions, and the
13   argument presented here today, I conclude that there is a valid
14   prima facie admiralty claim; that all other requirements of
15   Rule B and E have been met; that there is not a limited
16   circumstance, as outlined in Aqua Stoli, for vacating the
17   attachment under the limited circumstances doctrine.
18           So I conclude that the plaintiff has, at this hearing,
19   met each and every element of the plaintiff's burden; and,
20   therefore, the motion to vacate the attachment is denied.
21           Is there anything further?
22           MS. PETERSON:  No, your Honor.
23           MR. UNGER:  No, your Honor.
24           THE COURT:  Thank you all very much.
25                   * * *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SEMPRA METALS LTD.,                                     :
                                                        :
                    Plaintiff,                          :
                                                        :
        - against -                                     :
                                                        :
INTERNATIONAL BALTIC SHIPPING                           :
a.k.a. I.B.S. a.k.a. IBS, INTERNATIONAL                 :
BALTIC SHIPPING LTD.,                                   :
BALTAMERICA A/S a.k.a.                                  :
BALTAMERICA TRANSPORT AGENCY                            :
a.k.a. OOO BALTAMERIKA                                  :
TRANSPORTNOE AGENTSTVO                                  :
a.k.a. BALTAMERICA a.k.a. ZAO                           :
BALTAMERICA a.k.a. ZAO                                  :
BALTAMERIKA, and                                        :
MARINE UNITED FORWARDERS a.k.a.                         :
MARINE INTERNATIONAL                                    :
FORWARDERS,                                             :
                                                        :
                    Defendants.                         :
-----------------------------------------------------------X



RECEIVED
MAR 27 2007
U.S.D.C. S.D. N.Y.
CASHIERS

07 CV 1170 (PKC)
ECF CASE

## AMENDED VERIFIED COMPLAINT

Plaintiff, SEMPRA METALS LTD. (hereafter referred to as "Sempra" or "Plaintiff"), by

and through its attorneys, Tisdale & Lennon, LLC, as and for its Verified Complaint against the

Defendants, INTERNATIONAL BALTIC SHIPPING a.k.a. I.B.S. a.k.a. IBS (hereafter referred to

as "IBS"), INTERNATIONAL BALTIC SHIPPING LTD. (hereafter referred to as "IBS Ltd."),

BALTAMERICA A/S a.k.a. BALTAMERICA TRANSPORT AGENCY a.k.a. OOO

BALTAMERIKA TRANSPORTNOE AGENTSTVO a.k.a. BALTAMERICA a.k.a. ZAO

BALTAMERICA a.k.a. ZAO BALTAMERIKA (hereafter referred to as "Baltamerica") and

MARINE UNITED FORWARDERS LTD. (hereafter referred to as "MUF") a.k.a. MARINE

INTERNATIONAL FORWARDERS LTD. (hereafter referred to as "MIF")(collectively referred to

as "Defendants") alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.    At all times material to this action, Plaintiff was, and still is, a foreign company, or other business entity, organized under, and existing by virtue of foreign law with a principal place of business in London.

3.    Upon information and belief, Defendant Baltamerica was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a principal place of business in Russia.

4.    Upon information and belief, Defendant IBS was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a principal place of business in Russia.

5.    Upon information and belief, Defendant IBS Ltd. was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

6.    Upon information and belief, Defendant MUF/MIF was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

7.    Pursuant to a draft charter party and contract of affreightment dated January 26, 2004, Plaintiff Sempra, acting as charterer, contracted with non-party Bakersfield Ltd., Baltamerica and IBS as owners for the shipment of a total quantity of 48,000 mt aluminum ingots from St. Petersburg to Baltimore during the period from February 10, 2004 to March 31, 2005 aboard vessels "to be nominated."

8.    The draft charter party specifies that non-party Bakersfield Ltd. was the disponent owner of the vessels.

9.    Certain disputes arose between the parties regarding Defendants' repudiation of the contract, failure to pay freight and other breaches of the charter party.

10.  As a result of Defendants' breaches of the charter party contract, Plaintiff has sustained damages in the total principal amount of $745,920.00, exclusive of interest, arbitration costs and attorneys fees.

11.  Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

12.  Despite due demand, Defendants have failed to pay the amounts due and owing under the charter party and contract of affreightment.

13.  Thus, the Plaintiff commenced arbitration against Bakersfield Ltd., Baltamerica and IBS and appointed its arbitrator.

14.  The arbitration panel issued an interim declaratory award on September 29, 2005 and a Final Award in Plaintiff's favor on May 10, 2006.

15.  The arbitration panel held that each of the defendants was jointly and severally liable as "owners" of the vessels.

16.  Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration pursuant to English Law. As best as can now be estimated, Plaintiff is entitled to recover the following amounts under the final arbitration award:

| | | |
|---|---|---|
| A. | Principal claim: | $745,920.00 |
| B. | Interest at 5.5% compounded Quarterly from September 8, 2004: | $103,478.17 |
| C. | Costs, including costs of the Award plus Interest at 6.75% compounded quarterly from the date of payment | $175,000.00 |
| **Total** | | $1,024,398.10 |

17.  Upon information and belief, IBS Ltd. is the alter ego of IBS because it dominates and disregards IBS Ltd's corporate form to the extent that IBS is actually carrying on IBS Ltd's business and operations as if the same were its own.

3

18.    Upon information and belief, Defendant IBS Ltd. is an alias, or agent of Defendant IBS and/or IBS is an alias, or agent of IBS Ltd.

19.    Upon information and belief, Defendants IBS Ltd. and IBS share common ownership and operation such that IBS Ltd. is a 75% shareholder of IBS.

20.    Upon information and belief, IBS Ltd. has no separate, independent identity from Defendant IBS as they use their names interchangeably in their correspondence with the Plaintiff.

21.    In the alternative, Defendant IBS Ltd. is the paying agent of Defendant IBS.

22.    Upon information and belief, the CEO of IBS, Vladimir Stepanov, has directed that payments be made to IBS Ltd. on multiple occasions regarding business IBS has conducted with third party Henry Bath B.V.

23.    In the alternative, Defendant IBS Ltd. is merely a shell-corporation through which IBS conducts its business.

24.    In the further alternative, Defendants IBS Ltd. and IBS are partners and/or are joint venturers.

25.    In the further alternative, Defendants IBS and IBS Ltd. are affiliated companies such that Defendant IBS Ltd. is now, or will soon be, holding assets belonging to Defendant IBS and vice versa.

26.    Upon information and belief, Defendant MUF is also known as MIF. Further, MIF is the successor of MUF and these entities share a common address of Suite 22, 95 Wilton Road, London SWIV 1BZ UK, and a "swift code" of RZSBMRUMM.

27.    Upon information and belief, Defendant MUF/MIF is an alias, or agent of Defendant Baltamerica.

28.    In the alternative, Defendant MUF/MIF is the paying agent of Defendants Baltamerica and/or IBS.

29.    Specifically, upon information and belief, the CEO of IBS, Vladimir Stepanov, has directed that payments be made to Marine United Forwarders Ltd. regarding business IBS has conducted with third party Henry Bath B.V.

30.    In the further alternative, Defendant MIF/MUF is merely a shell-corporation through which Baltamerica and/or IBS conducts its business.

31.    In the alternative, MIF/MUF is the alter ego of Baltamerica because it dominates and disregards Baltamerica's corporate form to the extent that MIF/MUF is actually carrying on Baltamerica's business and operations as if the same were its own.

32.    In the further alternative, Defendants MIF/MUF and Baltamerica are partners and/or are joint venturers.

33.    In the further alternative, Defendants MIF/MUF and Baltamerica are affiliated companies such that Defendant MIF/MUF is now, or will soon be, holding assets belonging to Defendant Baltamerica and vice versa.

34.    Upon information and belief, Baltamerica A/S is also known as Baltamerica Transport Agency.

35.    Upon information and belief, in May of 2005, Baltamerica A/S changed their trading style to Baltamerica Transport Agency.  However, all of their contact details remained the same as did the individual named for chartering, Mr. Ivan Kouznetsov.

36.    Further, upon information and belief, Baltamerica A/S and Baltamerica Tranport Agency list the same address, website, email, "GN Comtext," and Telex on their letterhead and in their correspondence.

37.    Upon information and belief, Baltamerica Transport Agency is also known as OOO Baltamerika Transportnoe Agentstvo.

38.  Upon information and belief, Baltamerica A/S and Baltamerica Transport Agency are also known as ZAO Baltamerica and/or ZAO Baltamerika.  For example, Baltamerica A/S and ZAO Baltamerica list the same address, website, email, "GN Comtext," telex, phone and fax numbers on their letterhead and in their correspondence.

39.  In the alternative, Baltamerica Transport Agency is the alter ego of Baltamerica A/S because it dominates and disregards Baltamerica A/S's corporate form to the extent that Baltamerica Transport Agency is actually carrying on Baltamerica A/S's business and operations as if the same were its own.

40.  In the alternative, Defendant Baltamerica Transport Agency is an alias, or agent of Defendant Baltamerica A/S and/or Baltamerica A/S is an alias, or agent of Baltamerica Transport Agency.

41.  Upon information and belief, Defendants Baltamerica Transport Agency and Baltamerica A/S share common ownership, operation, personnel and premises.

42.  Upon information and belief, Baltamerica A/S has no separate, independent identity from Baltamerica Transport Agency, ZAO Baltamerica and/or OOO Baltamerica Transportnoe Agentstvao as Defendants share a common location at 198184 St. Petersburg, Kanonersky Ostrov, 8A, Russia, common phone numbers, and common directors and officers, including Mr. Alexander Kudriavtsev and Mr. Vladimir Pavlov, and use their names interchangeably in their correspondence with the Plaintiff.

43.  In the alternative, Defendant Baltamerica A/S is merely a shell-corporation through which Baltamerica Transport Agency conducts its business.

44.  In the further alternative, Defendants Baltamerica A/S. and Baltamerica Transport Agency are partners and/or are joint venturers.

6

45.     In the further alternative, Defendants Baltamerica A/S and Baltamerica Transport Agency are affiliated companies such that Defendant Baltamerica Transport Agency is now, or will soon be, holding assets belonging to Defendant Baltamerica A/S and vice versa.

46.     The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank A.G., HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Barclays Bank, BNP Paribas, Bank of India, Bank of China, Calyon, Fortis Bank, ING, Societe Generale and/or UBS AG which are believed to be due and owing to the Defendants.

47.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.     That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

7

attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including, but not limited to, ABN Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank A.G., HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Barclays Bank, BNP Paribas, Bank of India, Bank of China, Calyon, Fortis Bank, ING, Societe Generale and/or UBS AG Bank N.A., which are due and owing to the Defendants, in the amount of $1,024,398.10 calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    An Order recognizing and enforcing the final London arbitration award issued in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.;*

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

E.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
       March 27, 2007

The Plaintiff,
SEMPRA METALS LTD.,

By: _____
Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE & LENNON, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
ldavies@tisdale-lennon.com
ttisdale@tisdale-lennon.com

8