Michael J. Walsh (6578)
Keith W. Heard (8578)
Burke & Parsons
100 Park Avenue
New York, NY  10017-5533
Tel:  (212) 354-3800
Fax:  (212) 221-1432

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SINORICHES GLOBAL LIMITED,** <br><br>                               **Plaintiff,** <br><br>       v. <br><br> **NEW OCEAN SHIPPING CO. LTD., MULTILOGISTIC SRL, and ARO STEEL SRL** <br><br>                              **Defendants.** | 07-Civ-5779 (RJH) <br><br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE TO VACATE ATTACHMENT AND DISMISS COMPLAINT** <br><br> **Electronically Filed** |

Defendant, Multilogistic Srl ("Multilogistic"), submits this Reply Memorandum of Law to rebut arguments made by plaintiff, Sinoriches Global Limited ("SGL"), in its Memorandum of Law in Opposition to Motion to Vacate ("Memo in Opposition").

**POINT I**

**PLAINTIFF HAS NOT ESTABLISHED A VALID *PRIMA FACIE* ADMIRALTY CLAIM AGAINST MULTILOGISTIC.**

Plaintiff erroneously claims Multilogistic is urging a fact-intensive inquiry on this Court in violation of the spirit of *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460

F.3d 434 (2d Cir. 2006).  However, any fair reading of Multilogistic's Memorandum of Law shows that it is the sufficiency of the pleading itself, under the heightened pleading standard of Fed.R.Civ.P. Supp. E (2)(a), which Multilogistic attacks.  Multilogistic does not ask this Court to engage in any far-flung factual inquiry.  It simply requests that the Court determine whether information set forth within the four corners of the pleading sufficiently states a valid *prima facie* maritime claim *against Multilogistic.*

Plaintiff mistakenly asserts "[t]he factual dispute as to which defendant is responsible for the payment of demurrage is not to be analyzed at this stage" [i.e., at the Supplemental Rule E (4)(F) hearing].  Memo in Opposition, p. 7.  However, if the *Winter Storm* and *Aqua Stoli* decisions teach anything at all, it is that the attaching plaintiff must have an *in personam* claim against the defendant whose assets are seized.  Here, however, we have nothing more than plaintiff's *ipse dixit* assertions of Multilogistic's "responsibility" for New Ocean's debt.

Plaintiff claims that its pleading "more than sufficiently alleged a valid prima facie claim against Multilogistic."  Memo in Opposition, p. 7.  It further asserts that it has adequately pled that Multilogistic "breached a maritime contract."  Memo in Opposition, p. 6.  However, there is simply no allegation of "breach" in paragraphs 6, 7 or 8 of the Verified Complaint.  More importantly, there is no allegation of a contract *between Multilogistic and SGL* (or of facts from which this Court could legitimately infer a

contractual responsibility on the part of Multilogistic for a debt allegedly incurred under the SGL/New Ocean contract).

The mere fact that there were similar charters executed on the same day between SGL and New Ocean, on the one hand, and New Ocean and Multilogistic --acting as agent for AroSteel -- on the other, does not demonstrate anything untoward or nefarious. Indeed, this is the very nature of the shipping business and it is how profits are made. One party leases space on a ship and then re-lets the space, in turn, to someone else, at a higher rate. This is simply arbitrage. It does not, however, destroy the separateness of the contracting parties within the contracting chain. Nor does it create substantive liabilities between parties such as Multilogistic and SGL, who are not in privity of contract with each other.

Plaintiff mistakenly argues that "Multilogistic paid the Sinoriches freight bill." Memo in Opposition, p. 7; *see also* Bennett Declaration, ¶¶ 9, 10 (and Exhibit E attached thereto). No doubt, plaintiff hopes to create a false syllogism that, if Multilogistic paid the freight bill directly to SGL, it should, therefore, be held similarly liable to pay the demurrage bill directly to SGL. However, Plaintiff's underlying premise is wrong. SGL did not bill freight directly to Multilogistic (*see* Exhibit E to Bennett Declaration which plainly shows that SGL directed its freight invoice to its contractual partner, New Ocean.) Moreover, Multilogistic did not pay freight directly to SGL. Instead, New Ocean sent its own freight bill to Multilogistic (as would be expected, given the separate contractual

relationships between the parties).  A copy of New Ocean's freight bill to Multilogistic is attached hereto as Exhibit A.  As can readily be seen from New Ocean's freight invoice, it was *New Ocean* who directed that Multilogistic make its freight payment in two separate subpayments.  New Ocean's payment instructions on the freight invoice direct a partial payment to a bank account at Nanyang Commercial Bank Ltd., in favor of Oceanlink Navigation Co. Limited.  (Apparently, Sinoriches now claims some connection with this account, although Multilogistic had no knowledge of such at the time the payment was made.)  New Ocean's freight invoice directed that Multilogistic pay the balance of New Ocean's freight invoice to a bank account at China Merchants Bank H.O., Shenzhen, P.R.C. in favor of Eastern Ocean Transportation Co., Limited.  Multilogistic made the foregoing two subpayments in the manner directed by its contractual partner, New Ocean.  *See* Evidence of Payment, attached hereto as Exhibit B.  Thus, the formal distinctions between the SGL/New Ocean and New Ocean/Multilogistics charters were respected by the parties and there is no basis to hold Multilogistics liable, on the present state of the pleadings, for New Ocean's debt to SGL.

Finally, Plaintiff argues that Multilogistic was more than simply the agent of AroSteel.  Bennett Declaration, ¶ 8.  Yet, Plaintiff acknowledged in correspondence with Multilogistic that AroSteel was Multilogistic's "principal".  On May 22, 2007, SGL's agents, Trafalgar Shipping Ltd., sent Multilogistics an email plainly acknowledging that Multilogistic was merely an agent for a disclosed principal, AroSteel.  A copy of this email (together with an informal translation thereof) is attached hereto as Exhibit C.  Moreover,

in the correspondence which Multilogistic sent to the agents for SGL, it clearly confirmed that it was acting merely "as agent" for AroSteel.  *See* Exhibit D attached hereto.  It is hornbook law that an agent for a disclosed principal is not liable for a breach of contract by the principal. *Fireman's Fund McMgee Marine v. M/V CAROLINE*, No. 02-Civ. 6188, 2004 WL 287633, at * 2 (S.D.N.Y. February 11, 2004).

Quite simply, Plaintiff has failed to adequately address the *Tide Line* and *Dolco Investment* decisions discussed at length in defendant's Memorandum in Support of the Motion to Vacate.  Both of those decisions teach that *Aqua Stoli* did not void Rule E (2)(a's) heightened requirement for pleading facts as opposed to mere legal conclusions.

In addition, by introducing the transcript of the hearing held before Judge Castel on September 29, 2006 in *Route Holding Inc. Beam Co. v. International Oil Overseas Inc.*, (*See* Exhibit 1 to Memo in Opposition)[1], Plaintiff has only reinforced Multilogistic's argument that facts and not conclusions are necessary under Rule E (2)(a).  From a review of that transcript, it is apparent that the allegations in the Complaint before Judge Castel were more detailed than those at issue here.  *See* page 24 of the transcript which recite the

---

[1] The Memo in Opposition purports at page 4 to attach as "Exhibit 1" the "*Order in Tide Line, Inc. v. Eastrade Commodities, Inc. and Transclear,* S. A, 06 Civ, 1979 (KMW)."  However, the *Tide Line* Order was not attached to the opposition papers forwarded under cover of plaintiff's email to the Court dated August 14, 2007.  What was attached to the Memo in Opposition was the transcript of a hearing in an entirely different proceeding, *Route Holding Inc. Beam Co. v. International Oil Overseas Inc., 06 Cv 03428.*

operative allegations containing facts sufficient to state a piercing claim.[2] Moreover, Judge Castel had before him a Declaration from the plaintiff which contained highly detailed factual allegations which Judge Castel found alleged a piercing claim "chapter and verse." *See* Transcript, p. 25. Here by contrast, the record is simply devoid of any allegation by SGL of a contract between SGL and Multilogistic or of any facts which would state a valid *prima facie* maritime claim against Multilogistic for a debt on a contract to which it is not a party.

POINT II

**PLAINTIFF HAS MISREAD THE UNIFORM CONVENTION
WHICH FORMS A STATUTORY BAR TO THIS ACTION.**

In *Aqua Stol.*, 460 F.3d at 445, the Second Circuit explained that, at a Rule E (4)(f) hearing, an attaching plaintiff must show *inter alia* that there is no statutory or maritime law bar to the attachment. In its main brief, Multilogistic established that Plaintiff's allegation that its demurrage claim is arbitrable must be examined against the requirements of the Convention on the Recognition and Enforcement of Foreign Arbitral

---

[2] The operative allegations, which contain more facts than those in issue here, was summarized by Judge Castel as follows:

> Here, the plaintiff alleges that MWS is the alter ego of IOOI, *but it does not simply leave it as a conclusory allegation.* It goes on to allege that the reason it believes it is the alter ego is because IOOI dominates and disregards MWS's corporate form to the extent that MWS is actually carrying on IOOI's business and operations as if the same were its own. *It further goes on to allege that MWS, acting as paying agent, acts as paying agent or arranges for other nonparties to satisfy the debts and obligations of IOOI.* (Emphasis added). Transcript, p. 24.

Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force with respect to the United States, Dec. 29, 1970) (the "Convention"), as implemented, 9 U.S.C. §§ 201-08.[3] The Convention requires that, for an arbitration agreement to be legally enforceable, it must be set forth in an agreement in writing and that agreement must be contained in "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention art. II, § 2.

Unable to satisfy the Convention's requirements, Plaintiff opts instead to *change* Multilogistic's argument and respond to the straw man it has created. Plaintiff takes the position that the Convention does not prohibit the use of provisional remedies such as attachment pursuant to Supplemental Rule B, relying on this Court's decision in *Construction Exporting Enterprises, Uneca v. Nikki Maritime Ltd.*, 558 F.Supp. 1372 (S.D.N.Y. 1983). Although there are other cases which hold that the use of provisional remedies, such as attachment, *is* contrary to the Convention, *see, e.g., McCreary Tire & Rubber Co. v. CEAT S.p.A.,* 501 F.2d 1032 (3d Cir. 1974), those cases, along with the case cited by Plaintiff, are absolutely irrelevant because Plaintiff has misdescribed the argument.

The issue before this Court is not whether the Convention prohibits the use of provisional remedies, such as maritime attachment. The issue is whether the "agreement"

---

[3] In *Missouri v. Holland*, 252 U.S. 416, 432 (1920), the Supreme Court observed that "by Article 6 [of the Constitution] treaties made under the authority of the United States, along with the Constitution and laws of the United States made in pursuance thereof, are declared the supreme law of the land." *See also, Renkel v. U.S.,* 456 F.3d 640, 642 (6th Cir. 2006) ("[T]reaties have the same legal effect as statutes", citing *Whitney v. Robertson*, 124 U.S. 190 (1888)).

to arbitrate alleged in the Complaint, as between Plaintiff and Multilogistic, is sufficient to satisfy the basic requirements of an "agreement in writing", as required by the Convention. Convention art. II, § 1.

Clearly, Plaintiff has failed to allege in the Complaint or show in its papers in opposition that its alleged agreement to arbitrate with Multilogistic passes muster under the Convention. Paragraph 6 of the Complaint alleges that Plaintiff entered into a charter party with defendant New Ocean by which the latter gained the use of the vessel MICRO, paragraph 8 alleges that Multilogistic was "bound by the terms and conditions of the charterparty" and paragraph 10 alleges that "pursuant to the terms and conditions of the charterparty", all disputes were subject to arbitration in London. However, Plaintiff fails to allege that the charter party or the alleged arbitration agreement was "signed by the parties or contained in an exchange of letters or telegrams", as required by the Convention. *Id.* at art. II, § 2.

A maritime charter party does not have to be signed or in writing to be enforceable *as a maritime contract* under U.S. law. M.Wilford *et al.*, *Time Charters* at p. 60 (5th ed. 2003). However, that is not the same thing as containing a valid and enforceable *agreement to arbitrate* under the Convention, which has separate requirements. Plaintiff may have pleaded an enforceable contract with defendant New Ocean but that does not mean Plaintiff has established the existence of a valid and enforceable agreement to arbitrate with Multilogistic under the Convention. This pleading failure is fatal since, if

Plaintiff cannot establish compliance with the Convention, it cannot prove there is no statutory or maritime law bar to the attachment, as required by the Second Circuit in *Aqua Stoli*.

## CONCLUSION

For all the foregoing reasons, Plaintiff's attachment of the total sum of $7,619.00 of Defendant Multilogistic's funds should be vacated, garnishee Wachovia Bank should be ordered to release said funds and the Verified Complaint should be dismissed with prejudice as against Multilogistic, with attorneys' fees and costs.

Dated:   New York, NY
         August 15, 2007

                                        BURKE & PARSONS
                                        Attorneys for Defendant
                                        MULTILOGISTICS SRL

                                        By   s/Michael J. Walsh
                                             Michael J. Walsh (MW-6578)
                                             100 Park Avenue
                                             New York NY  10017-5533
                                             (212)354-3800

To:   Bennett, Giuliano, McDonnell
      & Perrare LLP
      Attn: William R. Bennett III, Esq.
      Attorneys for Plaintiff
      225 West 34th Street
      Suite 402
      New York, NY  10122

O:\CM\9011_MUL\BP_Doc\0012.doc

# NEW OCEAN SHIPPING CO., LTD

TO : MULTILOGISTIC SRL
DD : MAR 1ST, 2007
RE : MV "MICRO" /SHANGHAI—GENOA// OCEAN FRT

PLS BE ADVD A/M VSL HAD COMPLETED LOADING HER CARGO AND SAILED FROM SAHNGHAI. PLS KINDLY ARRANGE THE REMITTANCE OF THE OCEAN FRT. THE BREAKDOWN ASF:

## FREIGHT INVOICE

| | |
|---|---|
| 7092.166MT STEEL PIPE   ON USD 76.00/MT<br>(B/L NO. SGLSHARL05001/2/3/19/20) | USD539,004.60 |
| DUE TO OWNERS | USD539,004.60 |

PLS KINDLY CHECK AND CONFIRM IT THEN REMIT IT TO THE FOLLOWING OF THE OWR'S NOMINATED BANK ACCOUNTS AS SOON AS POSSIBLE.

1. PLS REMIT USD42552.98, TO THE BANK ACCOUNT AS FOLLOWING:

BENEFICIARY'S BANK:    CHINA MERCHANTS BANK H.O., SHENZHEN, P.R.C
SWIFT CODE:            CMBCCNBS
BENEFICIARY:           EASTERN OCEAN TRANSPORTATION CO., LIMITED
A/C NO. OF BENEFICIARY: OSA 0883160232001

2. PLS REMIT USD496451.62 , TO THE BANK ACCOUNT AS FOLLOWING:

BANKER:         NANYANG COMMERCIAL BANK LTD, HONGKONG
SWIFT ADDRESS:  NYCBHKHH
A/C NO.:        043-457-100-053-26
IN FAVOUR OF:   OCEANLINK NAVIGATION CO LIMITED

KINDLY FAX THE BANKING SLIP TO US WHEN THE PROCESS IS COMPLETED. YOUR PROMPT ACTION IN THIS MATTER WILL BE HIGHLY APPRECIATED.

BEST REGARDS.

第1页

EXHIBIT A



# MULTILOGISTIC
Integrated Logistics & Freight Forwarders

SAN PAOLO IMI
VIALE PICENO
20100 MILANO


COPIA

Segrate 09 MARZO 2007

Con la presente, VI preghiamo di voler eseguire il seguente bonifico:

**BENEFICIARIO:** OCEANLINK NAVIGATION CO LIMITED

**IMPORTO** USD 496.451,62.=

**BANCA D'APPOGGIO:** NANYANG COMMERCIAL BANK LTD HONGKONG
SWIFT NYCBHKHH A/C 043-457-100-053-26

**VALUTA BENEFICIARIO:** 14 MARZO 2007

**RIFERIMENTI:** MV MICRO /SHANGHAI -GENOA
B/L SGLSHARL05001/2/3/19/20

In attesa dell'addebito su ns c/c USD 9346284 aperto presso di Voi, porgiamo cordiali saluti.


MULTILOGISTIC SRL





ISO 9001 / 2000    IATA
C.N° 4829 / 1

| Sede Legale | Filiale di Genova | Multilogistic Srl Filiale di Milano |
|---|---|---|
| Via C.G. Merlo, 3 | Via A.Cantore, 92/120 | Via Morandi, 55/65 |
| 20122 Milano | 16149 Genova | 20090 Segrate (MI) |
| Cap. Soc.: Euro 800.000,00 i.v. | Tel.: 39.010.64877.11 | Tel.: 39.02.210037.1 |
| R.E.A. 1372354 | Fax: 39.010.64877.20 | Fax: 39.02.21670921 |
| R.I. MI 146 - 312486 | E-mail: multilogistic@multilogistic.it | E-mail: multilogisticmil@multilogistic.it |
| C.F. / P.I. (IT) 10435040158 | | |

EXHIBIT B



# MULTILOGISTIC
Integrated Logistics & Freight Forwarders





SAN PAOLO IMI
VIALE PICENO
20100 MILANO

Segrate 09 MARZO 2007

Con la presente, Vi preghiamo di voler eseguire il seguente bonifico:

**BENEFICIARIO:**     EASTERN OCEAN TRANSPORTATION CO, LIMITED

**IMPORTO**     USD 42.552,98.=

**BANCA D'APPOGGIO:**     CHINA MERCHANTS BANK H.O. SHENZHEN P.R.C.
SWIFT CMBCCNBS A/C OSA 0883160232001

**VALUTA BENEFICIARIO:**     14 MARZO 2007

**RIFERIMENTI:**     MV MICRO /SHANGHAI -GENOA
B/L SGLSHARL05001/2/3/19/20

In attesa dell'addebito su ns c/c USD 9346284 aperto presso di Voi, porgiamo cordiali saluti.



MULTILOGISTIC SRL

  

ISO 9001 / 2000
C.N° 4836 / 1     IATA

**Sede Legale**
Via C.G. Merlo, 3
20122 Milano
Cap. Soc.: Euro 300.000,00 i.v.
R.E.A. 1372354
R.I. MI 146 - 319436
C.F./P.I. (IT) 10436040158

**Filiale di Genova**
Via A.Cantore, 80/120
16149 Genova
Tel.: 39.010.64977.11
Fax.: 39.010.64877.20
E-mail : multilogistic@multilogistic.it

**Multilogistic Srl**
**Filiale di Milano**
Via Morandi, 52/55
20090 Segrate (MI)
Tel.: 39.02.213087.1
Fax.: 39.02.21570921
E-mail: multilogisticmi@multilogistic.it

Da/Fm.: Studio Antonio M. Oppicelli Avvocato
(Email: mail@oppicelli.biz)

Mike,
EM msg. 3
Ship's reps. sending detention notice.
Translation of text below in bold character:

"K.a.: Mr. Guardiano
PLease pass the foll. message from the owners of the captioned ship to your Principals Arosteel"

BR


Antonio M. Oppicelli
Via Roma 6/8 16121 Genova, Italy
tel.: +39 010 5958830/5958976
fax: +39 010 5304980
www.oppicelli.biz

Con/with StrictlyLegal® in China (PRC & Hong Kong), Albania

Riservato al destinatario – confidenziale
Reserved to the receiver - confidential



-------- Messaggio Originale --------
**Oggetto:**I: MV MICRO a Genova
    **Data:** Wed, 23 May 2007 10:09:01 +0200
        **Da:** Simone Guardiano <guardianos@multilogistic.it>
        **A:** 'Studio Oppicelli' <mail@oppicelli.biz>
        **CC:** 'Marras Mario - MLIT/GOA' <mmarras@multilogistic.it>



```
Simone Guardiano
Multilogistic Srl
Via Cantore, 8G, 21° Floor - 16149 - Genoa - Italy
Ph.+39/010/64877.56    -    Fax +39/010/64877.20
Mobile +39/340/1620488
-----Messaggio originale-----
Da: Trafalgar Shipping Srl [mailto:guido@trafalgarshipping.it]
Inviato: martedì 22 maggio 2007 15.46
A: Simone Guardiano
Oggetto: MV MICRO a Genova

Alla c.a.: Sig. Simone Guardiano

Preghiamo passare la seguente comunicazione da armatore nave in oggetto ai
ricevitori Vs. mandanti Arosteel:
```

Quote

    PLS KEEP PUSHING ALL CONCERNED PARTIES TO HURRY UP. WE HOPE SHE CLD BE
    ESCAPED FM GENOA W/IN TDY.

**EXHIBIT C**

M'WHILE PLS ISSUE ATTACHED DETENTION NOTICE TO ALL RECEIVERS.

Unquote

Cordiali saluti.
Eleonora Ferrando

Trafalgar Shipping
Tel    : +39 010 5740974
Fax    : +39 010 5959221
e-mail: guido@trafalgarshipping.it

---

The information contained in this e-mail message is privileged and confidential information in

```
                                                        micro
===============================================================
    From: Tom Tang <brightsaildlc0vip.163.com>
      To: mail@sinoriches.com <mail@sinoriches.com>
 Subject: Fw: Fw: Demurrage of Micro
    Date: 2007-6-5 10:45:18
===============================================================
```

Wang / Tang

Good day!

Kindly pls flwg from Chtr side:

- QUOTE -

DEAR MR TANG

FLWG E-MAIL FM ITALY CHTRS:

QUOTE:

Dear Sirs,

we confirm strictly without any prejudice that we have received your document called "demurrage calculation" and that same has been timely passed onto Messrs Arosteel the cargo owners on whose behalf and in whose name as you know we are acting "as agents".

We are pressing them for their reply/their determinations as they are the subject liable to pay, in case there were anything to pay, and we shall let you have their comments urgently.

Kind regards.

Multilogistic Srl

UNQUOTE

B. RGDS/LIXIAN

---

newocean001
2007-06-05

B. rgds / Tang

第 1 页

**EXHIBIT D**