Michael J. Walsh (6578)
Keith W. Heard (8578)
Burke & Parsons
100 Park Avenue
New York, NY  10017-5533
Tel:  (212) 354-3800
Fax:  (212) 221-1432

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SINORICHES GLOBAL LIMITED,** | 07-Civ-5779 (RJH) |
| **Plaintiff,** | |
| **v.** | |
| **NEW OCEAN SHIPPING CO. LTD.,** **MULTILOGISTICS SRL, and** **ARO STEEL SRL** | |
| **Defendants.** | **Electronically Filed** |

**MEMORANDUM OF LAW IN SUPPORT OF ORDER**
**TO SHOW CAUSE TO VACATE ATTACHMENT**
**AND DISMISS COMPLAINT**

0006.DOC

---

**TABLE OF CONTENTS**

---

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

POINT I
PLAINTIFF CANNOT MEET ITS BURDEN TO SUSTAIN THE ATTACHMENT
AT A RULE E(4(f) HEARING BECAUSE IT HAS NOT ESTABLISHED A
*PRIMA FACIE* ADMIRALTY CLAIM AGAINST THIS DEFENDANT AND
CANNOT ESTABLISH THERE IS NO STATUTORY BAR TO THE CLAIM .................. 6

   A.  PLAINTIFF HAS NOT ESTABLISHED A VALID PRIMA FACIE
     ADMIRALTY CLAIM AGAINST MULTILOGISTIC ........................................ 7

    1.  Plaintiff has not alleged any debt owed by Multilogistic to Plaintiff
      nor any debt owed by New Ocean to Plaintiff for which Multilogistic
      is responsible, sufficient to support the attachment ............................. 11

    2.  Plaintiff has not established any contract between it and Multilogistic
      sufficient to bind Multilogistic to arbitrate with Plaintiff or to
      obligate Multilogistic to pay Plaintiff demurrage ................................. 14

   B.  THERE IS A STATUTORY BAR TO THIS ATTACHMENT WHICH
     FORMS A VALID BASIS TO VACATE .................................................... 17

POINT II
PLAINTIFF'S FAILURE TO PLEAD ANYTHING MORE THAN BALD
CONCLUSIONS OF LAW WARRANTS DISMISSAL UNDER RULE 12 (B)(6) ........... 19

POINT III
THE WRIT OF ATTACHMENT CANNOT BE SUSTAINED AND, THEREFORE,
THE COMPLAINT MUST BE DISMISSED AS AGAINST MULTILOGISTIC FOR
LACK OF PERSONAL JURISDICTION ................................................................. 21

CONCLUSION ................................................................................................... 22

Michael J. Walsh (6578)
Keith W. Heard (8578)
Burke & Parsons
100 Park Avenue
New York, NY  10017-5533
Tel:  (212) 354-3800
Fax:  (212) 221-1432

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SINORICHES GLOBAL LIMITED,** | 07 Civ 5779 (RJH) |
| **Plaintiff,** | |
| v. | |
| **NEW OCEAN SHIPPING CO. LTD., MULTILOGISTICS SRL, and ARO STEEL SRL** | **MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE TO VACATE ATTACHMENT AND DISMISS COMPLAINT** |
| **Defendants.** | **Electronically Filed** |

### INTRODUCTION

Defendant, Multilogistic Srl ("Multilogistic"), erroneously sued herein as "Multilogistics Srl," submits this Memorandum of Law in support of its Order to Show Cause why this Court should not (1) vacate the maritime attachment obtained by Plaintiff pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, annexed to the Federal Rules of Civil Procedure, and grant other relief consistent with the Federal Rules, and (2) dismiss Plaintiff's Verified Complaint (hereinafter "Complaint").

Plaintiff's attachment should be vacated under Fed.R.Civ.P. Supp. Rules B and E (4) (f) because Plaintiff has failed to plead the circumstances out of which its claim arises with the level of particularity required by Suplemental Rule E (2)(a).  Plaintiff has also failed to plead facts sufficient to state a claim upon which relief can be granted and its Complaint should, therefore, be dismissed pursuant to Fed.R.Civ. P.Rule 12 (b)(6). Vacatur of the attachment would leave this Court without personal jurisdiction over Multilogistic.  Accordingly, if vacatur is granted, Plaintiff's Complaint as against Multilogistic must also be dismissed under Fed.R.Civ.P. Rule 12 (b)(2).

In further support of its requested Order to Show Cause, Defendant submits concurrently with this Memorandum of Law the Declarations of Simone Guardiano and Antonio Oppicelli.

### STATEMENT OF FACTS

Plaintiff, Sinoriches Global Limited ("SGL"), sought and obtained an *Ex Parte* Order of this Court dated June 19, 2007 directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment to a number of New York intermediary banks. The Clerk apparently thereafter issued such Process (although the actual writ received by Multilogistic is dated June 18, 2007).  As set forth in the Declaration of Simone Guardiano, a Sales Executive with Multilogistic, on or about July 13, 2007, an electronic funds transfer belonging to Multilogistic in the amount of $7,619.00 was attached while temporarily in the possession of Wachovia Bank en route to its ultimate destination. (Guardiano Declaration, ¶ 2).

Plaintiff's Complaint sought a maritime attachment to obtain security for the alleged non-payment of $706,962.00 of demurrage for the use of its vessel, M/V MICRO. (Complaint, ¶ 7). Plaintiff alleged that it had chartered the MICRO to co-defendant, New Ocean Shipping Co. Ltd. ("New Ocean"), under a charter party[1] dated on or before January 31, 2007. (Complaint, ¶ 6). Without providing a shred of additional fact, Plaintiff alleges that "[a]t all times relevant herein, defendant MULTILOGISTICS was bound by the terms and conditions of the charter party and responsible for the actions of NEW OCEAN, and accordingly is responsible for the $706,962.00." (Complaint, ¶ 8). It is not clear what "charter party" is meant by the allegations in paragraph 8 of the Complaint since no charter or other contract was annexed to the Complaint. One can only assume, then, that Plaintiff means the charter party between SGL and New Ocean described in paragraph 6 of the Complaint.

However, Multilogistic never entered or signed the alleged charter party between SGL and New Ocean, nor has it ever even seen a copy of that alleged contract. Therefore, Multilogistic denies that it is "bound" by the terms and conditions of that agreement and denies that it is "responsible for the actions of New Ocean." It further denies it entered any other agreement to pay demurrage to or arbitrate disputes with SGL. (Guardiano Declaration, ¶ 6).

---

[1] "A charter party is a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006).

Multilogistic is an Italian corporation engaged in the business of providing freight forwarding and other logistics services. (Guardiano Declaration, ¶ 3). Multilogistic's sole involvement with respect to the MICRO was to act as a freight forwarder for AroSteel, Srl ("AroSteel"), an Italian company and one of the other defendants named in this action. AroSteel had purchased several cargoes of steel from Chinese manufacturers/shippers on "FOB (stowed)" terms. AroSteel, in turn, hired Multilogistic as its freight forwarding agent to arrange for an ocean carrier to transport the cargoes from Shanghai, China to Genoa, Italy. (Guardiano Declaration, ¶ 7, 13).

Under applicable Italian law, contracts to provide freight forwarding services, such as the one at issue here between AroSteel and Multilogistic, establish an agency relationship. Multilogistic was thus retained to act as agent on behalf of its principal, AroSteel. (Oppicelli Declaration, ¶¶ 6, 7).

Acting for AroSteel, Multilogistic entered into a Fixture Note with New Ocean, as owner, to let space on the MICRO for the transportation of AroSteel's steel cargoes. A copy of that Fixture Note, which was dated as of January 31, 2007, is attached as Exhibit B to the Guardiano Declaration. SGL is not a party to the Fixture Note. Moreover, the Fixture Note does not refer in any way to the alleged SGL/New Ocean charter party. Therefore, the Fixture Note did not incorporate (as against Multilogistic) any alleged agreement to pay demurrage to SGL, or any alleged agreement to arbitrate disputes with

SGL.  In short, Multilogistic's sole contractual relationships were with AroSteel and New

Ocean.  (Guardiano Declaration, ¶¶ 8, 9, 10, 12, 14).

     Multilogistic never had dealings with New Ocean prior to the Fixture Note.

Multilogistic does not own or control any of the shares of New Ocean and New Ocean

does not own or control any of the shares of Multilogistic.  The two companies do not

share officers, directors, employees, bank accounts or office space.  Each is entirely

independent of the other.  (Guardiano Declaration, ¶¶ 8, 9).

     Once AroSteel's cargoes were loaded and stowed aboard the MICRO (a process in

which Multilogistic was not involved since the purchase terms were FOB (stowed)),

agents acting for SGL issued five bills of lading[2] for the cargoes.  Multilogistic played no

role in the drafting or issuance of those bills, which are attached as Exhibit C to the

Guardiano Declaration.  The bills do not contain any reference to the SGL/New Ocean

charter party.  (Guardiano Declaration, ¶¶ 16, 17, 18).  Indeed, the blank space on the

face of the bills,[3] which exists specifically to insert the date of and refer to the terms of a

---

[2] "A bill of lading is a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006).

[3] The face of each bill has a blank in the lower left corner that reads: "Freight payable as per Charter-Party dated _____".  The rear side of the bill, containing the "Conditions of Carriage," provides in Paragraph 1 that "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated."  The failure to insert the date, or any other reference to the SGL/New Ocean charter, demonstrates that the SGL/New Ocean charter party terms were not incorporated by reference.

*particular* charter party, was left entirely blank by SGL's agent.  Thus, the bills did not

incorporate the terms of the SGL/New Ocean charter.  As already noted, the Fixture Note

did not mention the terms of the SGL/New Ocean charter or bind Multilogistic in any

way to pay demurrage to or arbitrate disputes with SGL.

Accordingly, there is no contract or other obligation between Multilogistic and SGL

sufficient to support this attachment, which must be vacated.

### POINT I

**PLAINTIFF CANNOT MEET ITS BURDEN TO SUSTAIN THE ATTACHMENT
AT A RULE E (4)(f) HEARING BECAUSE IT HAS NOT ESTABLISHED
A *PRIMA FACIE* ADMIRALTY CLAIM AGAINST THIS
DEFENDANT AND CANNOT ESTABLISH THERE
IS NO STATUTORY BAR TO THE CLAIM.**

Fed.R.Civ.P. Supp. Rule E (4)(f) requires that "any person claiming an interest in

[the attached property] shall be entitled to a prompt hearing at which the *plaintiff* shall be

required to show why the … attachment should not be vacated or other relief granted

consistent with these rules" [emphasis added].  "Therefore, the plaintiff has the burden to

show that the attachment should not be vacated, and at the hearing the defendant can

attack 'the complaint, the arrest, the security demanded, or any other alleged deficiency in

the proceedings.'" *Dolco Investments, Ltd., Cypress v. Moonriver Developments Ltd.,* 486 F.

Supp. 2d 261, 265-6 (S.D.N.Y. 2007), *quoting* Fed.R.Civ.P. Supp. Rule E (4)(f), Advisory

Committee's Note.

A plaintiff bears a five-fold burden at a Rule E (4)(f) hearing challenging a Rule B

attachment.  Plaintiff must show that:

(a) it has met the filing and service requirements of Supplemental Rules B and E;

(b) it has a valid *prima facie* admiralty claim against the defendant whose assets were attached;

(c) the named defendant cannot be found within the district;

(d) the named defendant's property is within the district; and

(e) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

Defendant shows below why Plaintiff here cannot meets its burden with respect to *Aqua Stoli* factors (b) and (e).[4]

## A.   PLAINTIFF HAS NOT ESTABLISHED A VALID *PRIMA FACIE* ADMIRALTY CLAIM AGAINST MULTILOGISTIC.

To sustain its attachment of Multilogistic's funds, Plaintiff must establish that it has an *in personam* claim which is cognizable in admiralty against the defendant.  *Winter Storm Shipping Ltd. v. TPI,* 310 F.3d 263, 268 (2d Cir. 2002).  *Aqua Stoli* elaborated that, in order to withstand a motion to vacate, plaintiff must have a "valid *prima facie* admiralty claim against the defendant." 460 F.3d at 445.  In other words, an *in personam*

---

[4] Review of the Pacer docket sheet for this action does not show any entry for a Rule B affidavit filed by Plaintiff or its attorney.  Fed.R.Civ.P. Supp. Rule B (1)(b) requires that, in addition to the Complaint, the plaintiff or his attorney must file an affidavit stating that, to the best of the affiant's knowledge, the defendant cannot be found within the district.  Unless there is an error on the computerized docket sheet, Plaintiff has failed to meet the filing requirements of Rule B, and its attachment should be vacated on that ground as well.  *See, e.g.*, *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 422 (5th Cir. 2001) (district court did not err in refusing to order issuance of a Rule B writ of attachment where the plaintiff had not filed the affidavit required under Rule B).

claim against New Ocean or AroSteel will not suffice for a Rule B attachment against the assets of Multilogistic.

The Second Circuit "has not stated exactly what a plaintiff must show to make out a 'prima facie admiralty claim.'" *Transportes Navieros Terrestes, S.A. De D.V. v. Fairmount Heavy Transport N.V.,* No. 07 CV 3076, 2007 U.S. Dist. LEXIS 50260, at *10 (S.D.N.Y. July 6, 2007). As a result, a split has developed in this district as to the relevant test for evaluating the adequacy of the admiralty claim. *Compare Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,* 475 F. Supp. 2d 275 (S.D.N.Y. 2006) (holding that the applicable standard for establishing the *Aqua Stoli* factors is whether plaintiff has demonstrated "reasonable grounds" for the attachment), *with Tide Line, Inc. v. Eastrade Commodities, Inc.,* No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, at *14-15 (S.D.N.Y. August 15, 2006) (collecting cases and holding that a "reasonable grounds" or "probable cause" test is inconsistent with the more limited and less fact-intensive Rule E (4)(f) inquiry demanded by *Aqua Stoli* and concluding that a plaintiff can rely solely on the allegations of his Complaint to establish that his admiralty claim is a valid "*prima facie*" one).

The foregoing split in authority need not concern this Court. Regardless of which standard is applied, Plaintiff cannot establish a valid *prima facie* admiralty claim *against Multilogistic* because Plaintiff has no contract with Multilogistic; it has only its alleged agreement with New Ocean to which Multilogistic was not a party. Plaintiff has, thus, not

supplied the Court with anything remotely resembling "reasonable grounds" or "probable

cause" for why Multilogistic's property should be attached for the demurrage debt of New

Ocean.  Even using the less stringent standard applied by *Tide Line*, the allegations of

Plaintiff's Complaint do not allege a *single* supporting *fact* for why the corporate

separateness of Multilogistic should be disregarded such that it should be held liable for

the contractual debts of New Ocean.  Instead, the Complaint asserts a legal conclusion.

The sole and operative allegation against Multilogistic states simply that it is "bound" by

the Sinoriches/New Ocean charter and "responsible" for the actions of New Ocean.

(Complaint, ¶ 8).

　　　　Even *Tide Line* acknowledges that a "defendant may, under Supplemental Rule E

(4)(f), argue that *plaintiff's pleadings are themselves insufficient* to state such a claim;

otherwise, it is not clear how a defendant could argue that the '*prima facie* claim'

requirement of Supplemental Rule B has not actually been met." 2006 U.S. Dist. LEXIS at

*22-3 (emphasis added).  Moreover, "[s]uits in admiralty are subject to Supplemental

Rule E (2)(a) … ."  *OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.*, No. 06 Civ.

9441, 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007).  That Rule provides:

> In actions to which this rule is applicable the complaint shall state the
> circumstances from which the claim arises with such particularity that the
> defendant or claimant will be able, without moving for a more definite
> statement, to commence an investigation of the facts and to frame a
> responsive pleading.

Fed.R.Civ.P. Supp. Rule E (2)(a).

MEMORANDUM OF LAW                                                                                    Page 9 of 23

The Second Circuit has held that the "standard for the particularity of complaints [filed pursuant to the Supplemental Rules] is more stringent than the pleading requirements of the Federal Rules of Civil Procedure." *United States v. 4492 Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989), *reh'g denied*, 897 F.2d 659 (2d Cir. 1990); a*ccord, United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1547 n. 20 (11th Cir.1987); *see also United States v. 1,920,000 Cigarettes*, No. 02-Cv-437A, 2003 WL 21730528, at *3 (W.D.N.Y. Mar. 31, 2003) (in forfeiture context, standards under Rule C (2)(b) and Rule E (2)(a) are "more stringent than the general pleading requirements set forth in the Federal Rules of Civil Procedure"). While Rule 8 of the Fed.R.Civ.P. may permit "bare-bones" liberal notice pleading,[5] Supplemental Rule E (2)(a) requires *more. Tide Line*, 2006 U.S. Dist. LEXIS at *23-24.

A leading case on the proper construction of Fed.R.Civ.P. Supp. Rule E (2)(a) is *Riverway Co. v. Spivey Marine & Harbor Service Co.,* 598 F. Supp. 909 (S.D. Ill.1984), which involved an *in rem* proceeding against a tugboat. The *Riverway* Court said that vessel owners "are entitled to freedom from the threat of seizure of their livelihood *upon conclusory allegations* and dubious circumstances."[6] *Id.* at 913 (emphasis added). The Court further noted that Rule E (2)(a)'s requirement for "[p]leading specific

---

[5]  As argued in Point III below, Multilogistic contends that the dearth of facts alleged in the Complaint fails to meet even the liberal pleading standard of Rule 8 and the Complaint should be dismissed for failure to state a claim under Rule 12 (b)(6).

[6] Although the attachment at issue only seized $7,619.00 of Multilogistic's funds, Plaintiff is presumably continuing to serve PMAG's on garnishee banks to attach the balance of its alleged claim, and puts Multilogistic's ability to use New York intermediary banks at risk.

circumstances is one part of the process which guards against the improper use of admiralty seizure proceedings." *Id.*  Here, having obtained the advantage of an *ex parte* seizure remedy, Plaintiff is bound by and has not met the more stringent pleading requirements of Rule E (2)(a).

1)    **Plaintiff has not alleged any debt owed by Multilogistic to Plaintiff nor any debt owed by New Ocean to Plaintiff for which Multilogistic is responsible, sufficient to support the attachment.**

"Federal Courts sitting in admiralty apply federal common law when examining corporate identity."  *Status Int'l. S.A. v. M&D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998).  It is hornbook law that one corporation is not ordinarily liable for the debts for another.  "[C]ases in admiralty in which one corporation may be held for the acts or faults of another are and ought to be few."  *Insur. Co. of No. America v. Canadian American Navigation Co., Ltd.*, 1932 A.M.C. 1396, 1401 (D.C.Z. 1932).

Here, Plaintiff has simply advanced no reason why Multilogistic should be liable for a demurrage debt which New Ocean may (or may not have) incurred under a charter party to which Multilogistic is not a party.  Multilogistic does not control nor is it controlled by New Ocean.  The two companies are simply unrelated.  Plaintiff does not, in any event, plead an *alter ego* theory of liability.  In fact, the fatal problem with the Complaint is that it does not plead *any* theory of liability.

Indeed, the bare legal conclusion that Multilogistic is "bound" under the terms of the Sinoriches/New Ocean charter party and "responsible for the actions of New Ocean"

can be usefully compared to the operative allegation in the *Tide Line* case.  There, the issue was whether plaintiff had sufficiently alleged that defendant Transclear was the *alter ego* of co-defendant Eastrade.  The sole operative factual allegation in support of the *alter ego* theory was an assertion that "[u]pon information and belief, Defendant Transclear acts as paying agent, or arranges for other non-parties to satisfy the debts and obligations of defendant Eastrade."  2006 U.S Dist. LEXIS  95870, at * 3-4.

Chief Judge Wood found the foregoing allegation "did not meet the more particularized pleading standard set forth in Supplemental Rule E(2)(a) – nor even, arguably, the more liberal standard of Rule 8 (a), see *EED Holding v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005)(stating that 'conclusory' allegations regarding veil-piercing 'fail to satisfy even the more lenient Rule 8(a) pleading requirements'). " 2006 U.S. Dist. LEXIS at *42-43.[7]  If the operative allegation in *Tide Line*, (which contained at least a scintilla of fact in support of the alleged *alter ego* theory) was found wanting, the operative allegation in Plaintiff's Complaint, which is simply barren of fact, must be even more deficient.

---

[7] Plaintiff's attachment in *Tide Line* was ultimately upheld.  The court found that plaintiff had provided further allegations and evidence in support of its *alter ego* theory in its submissions during the course of the motion to vacate the attachment.  2006 U.S. Dist. LEXIS at * 43-44.  On this basis, the court found plaintiff had alleged a *prima facie* admiralty claim and the court granted plaintiff permission to file an amended complaint which alleged with greater detail the additional facts discovered after the filing of the original complaint.

Similarly, in *Dolco Investments, Ltd., Cypress v. Moonriver Development, Ltd.,* 486 F. Supp. 2d 261 (S.D.N.Y.), the court considered whether the allegations of a complaint against defendant GML, that it was liable on a veil-piercing theory for the debts of co-defendant Moonriver, were sufficient to meet the standard of Rule E (2)(a).   The complaint alleged the following allegations upon which GML's liability was asserted:

> Upon information and belief, defendant GML has been used by defendant Moonriver, from time to time, as a vehicle to pay funds owed to plaintiff Dolco.

> Upon information and belief, defendant Bromley is a director of both Moonriver and GML.

> Upon information and belief, defendant GML has used Moonriver to perpetuate a fraud and/or has so dominated and disregarded its corporate form that it primarily transacted GML's corporate business rather than Moonriver's own corporate business.

486 F. Supp. 2d at 270.

The court found the foregoing allegations failed to meet the heightened pleading standard imposed by Fed.R.Civ.P. Supp. Rule E (2)(a) because plaintiff had:

> not included any *factual* allegations that GML exercised complete domination over Moonriver.  *Other than the conclusory allegation of domination,* the Complaint and the Amended Complaint[8] both allege that GML paid Moonriver's debts "from time to time." (Compl. P 7; Am. Compl. P 10).  Under the heightened standard of Fed.R.Civ.P. Supp.Rule E(2)(a), *more is required.*  (Emphasis added).

---

[8] The plaintiff in *Dolco* had proposed to file an amended complaint with slightly different allegations than in the original complaint.  The court found that neither pleading met the standard of Supplemental Rule E (2)(a).

486 F. Supp. 2d at 272.   The court, therefore, held that the solitary conclusory allegation of domination in the complaint insufficiently alerted GML under Rule E (2)(a) to the basis of the *alter ego* claim against it.   The claim against GML was dismissed.

So too here, Plaintiff's naked allegation that the terms of the charter party between SGL and New Ocean "bind" Multilogistic and that Multilogistic is "responsible for the actions of New Ocean" are insufficient, as a matter of law, under Supplemental Rule E(2)(a), to alert Multilogistic to the nature of the claim asserted against it.

Multilogistic acted in this transaction as a freight forwarder at the request of the cargoes' purchaser, AroSteel.  Guardiano Declaration ¶ 7.  Under applicable Italian law, contracts by freight forwarders are agency contracts.  (Oppicelli Declaration, ¶ 6).  Multilogistic acted only as an agent in this transaction for its disclosed principal AroSteel and cannot be held liable as though it were a principal.

**2)   Plaintiff has not established any contract between it and Multilogistic sufficient to bind Multilogistic to arbitrate with Plaintiff or to obligate Multilogistic to pay Plaintiff demurrage.**

Arbitration is a creature of contract and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs. Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Multilogistic was not a party to the contract between SGL and New Ocean, which is the underlying agreement upon which Plaintiff founds its claim for attachment.  If Multilogistic agreed to arbitrate with any one

at all, a point which is not conceded here, it could only have been with New Ocean under the Fixture Note. Plaintiff, however, was not a party to that agreement.

The Fixture Note between New Ocean and Multilogistic does not incorporate the terms of the charter party between Plaintiff and New Ocean. Moreover, the bills of lading also fail to incorporate those terms because they too make no reference to the SGL/New Ocean charter party. Furthermore, the relevant blank on the face of the bills was left empty. *See* footnote 3, above.

To effectively incorporate the terms and conditions of a charter party, a bill of lading must generally "specifically refer[ ] to a charter party" and use "unmistakable language" indicating that it has been so incorporated. *Continental Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 283 (2d Cir. 2003). Requiring specific reference to a *particular* charter and unmistakable language of incorporation is usually necessary because, as negotiable instruments, bills of lading often pass into the hands of those who have nothing to do with a charter party and may have no notice of its terms. *Amoco Overseas Co. v. S.T. Avenger*, 387 F. Supp. 589, 593 (S.D.N.Y. 1975). Therefore, bills of lading should be "carefully if not restrictively construed." *Import Export Steel Corp.*, 351 F.2d 503, 506 (2d Cir.), *reh'g denied*, 356 F.2d 109 (1965).

In this case, the five bills of lading for AroSteel's cargo were issued on the standard "CONGENBILL" form. Two decisions from the Southern District have examined whether CONGEN bills of lading incorporated the terms and conditions of a charter

MEMORANDUM OF LAW                                                    Page 15 of 23

party in circumstances analogous to those at issue here.  In *Macsteel International USA Corp. v. M/V JAG RANI,* No. 02 Civ. 7436, 2003 WL 22241785 (S.D.N.Y. September 30, 2003), the court comprehensively reviewed the case law regarding the incorporation of charter party terms by reference into bills of lading and it refused to find the charter's terms were incorporated into the bill.  It concluded that "courts generally find that a charter party is not incorporated when the space provided in the bill of lading for the name and date of the charter party is left blank" (citations omitted).  2003 WL 22241785 at *3.[9]  That, of course, is the case here – the blanks on the face of each of the five bills were left *completely* blank.

Indeed, the facts in *Macsteel* presented an even stronger case for incorporation by reference than those here.  In *Macsteel*, the blank on the face of the CONGENBILL, did not refer to a date of a particular charter party but, at least had the words "AS PER RELEVANT" typed in the blank.  *Id.*  The court nevertheless found this insertion was too ambiguous to allow for incorporation of the argued charter party terms.

Similarly, in *Associated Minerals Corp. v. M/V ARKTIS SKY,* No. 90 Civ. 4562, 1991 WL 51087 (S.D.N.Y. April 3, 1991), the Court examined a CONGENBILL which had the words "As agreed" typed into the blank after the words: "Freight payable as per

---

[9] The *MacSteel* opinion, and the other incorporation by reference decisions it cites, appears to use the law of the forum to determine the threshold question of whether there has been incorporation by reference.  Multilogistic does not hereby waive any argument that, after determination of this threshold issue, foreign law should apply to determining substantive rights and liabilities pursuant to those bills of lading.

CHARTER-PARTY dated _____". *Id*. at *3.  The court found this insertion

insufficient to demonstrate an unmistakable intent to incorporate a *specific* charter party.

*Id*.  Moreover, the court attributed significance to the fact that the holder of the bill there

had categorically denied ever receiving the charter party.  *Id*.  Multilogistic has similarly

denied ever receiving the Sinoriches/New Ocean Charter.  (Guardiano Declaration, ¶ 6).

Finally, it is clear there were at least three charter agreements potentially in

existence in this case.  First, there was the Fixture Note between Multilogistic and New

Ocean; second, the alleged voyage charter between Sinoriches and New Ocean; and third,

presumably a time charter from a head owner to Sinoriches as disponent owner.

Situations involving multiple charters create more ambiguity and confusion and demand

even more specificity and unmistakable language if a bill is to incorporate the terms of a

*particular* charter.  *See, e.g, Joo Seng Hong Kong Co. Ltd. v. S.S. Unibulkfir*, 493 F. Supp.

35, 40 (S.D.N.Y. 1980) (holding that where there were three charters in issue, the Court

could not determine with any degree of certainty which charter's terms were

incorporated).  Here, where the five bills were left *totally* blank and multiple charters were

in existence, there was no unmistakable incorporation by reference of the terms of the

Sinoriches/New Ocean charter into the bills.

**B.    THERE IS A STATUTORY BAR TO THIS ATTACHMENT
        WHICH FORMS A VALID BASIS TO VACATE.**

In *Aqua Stoli*, the Court imposed on a plaintiff at a Supplemental Rule E (4)(f)

hearing the burden to demonstrate that there is no "statutory or maritime law bar" to the

attachment.  460 F.3d at 445.  Multilogistic submits there is such a statutory bar here and that it warrants vacatur.

All of the countries that arguably have an interest in the underlying transactions and in this litigation, including the United States, China, Italy and England, are parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force with respect to the United States, Dec. 29, 1970) (the "Convention"), as implemented, 9 U.S.C. §§ 201-08.  *See* www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

Accordingly, if there is an agreement to arbitrate, as Plaintiff alleges in paragraph 10 of the Complaint, it is governed by the Convention.  *See Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro,* 712 F.2d 50 (3d Cir. 1983).

The Convention provides that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them ... concerning a subject matter capable of settlement by arbitration."  Convention art. II, § 1.  The Convention goes on to define "agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."  Convention art. II, § 2.  The Second Circuit has held that the phrase "signed by the parties" modifies both of the preceding phrases such that, if Plaintiff is

MEMORANDUM OF LAW                                                    Page 18 of 23

relying on "an arbitral clause in a contract or an arbitration agreement" -- whichever it is -- either one must be "signed by the parties or contained in an exchange of letters or telegrams." *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.*, 86 F.3d 210, 218 (2d Cir. 1999). *See also Dynamo v. Ovechkin*, 412 F.Supp.2d 24 (D.D.C. 2006); *Bothell v. Hitachi Zosen Corp.,* 97 F.Supp.2d 1048 (W.D.Wash. 2000); *Sen Mar, Inc. v. Tiger Petroleum Corp.,* 774 F.Supp. 879, 882 (S.D.N.Y.1991).

Turning to the facts, Plaintiff cannot point to a document that satisfies the Convention's requirements. It has not alleged the existence of an arbitration agreement directly between itself and Multilogistic and, of course, there is none. There may be an arbitration clause in the as-yet-unseen charter party between Plaintiff and New Ocean but, under the Convention, that would not be binding on Multilogistic since it was not a party to and did not sign that contract. Likewise, there has been no exchange of "letters or telegrams" between Plaintiff and Multilogistic. Accordingly, Plaintiff cannot satisfy the Convention's requirement of an "agreement in writing" and cannot assert a claim against Multilogistic in arbitration in London, on which this action, as against Multilogistic, is based.

### POINT II

### PLAINTIFF'S FAILURE TO PLEAD ANYTHING MORE THAN BALD CONCLUSIONS OF LAW WARRANTS DISMISSAL UNDER RULE 12 (B)(6).

Bald assertions and conclusions of law will not suffice to state a claim under Fed.R.Civ.P. 12(b)(6). *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); s*ee also DeJesus v.*

*Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d. Cir. 1995), *cert. denied,* 519 U.S. U.S. 1007 (1996) (conclusory allegations masquerading as facts are insufficient to withstand even the liberal Rule 12 (b)(6) standard in a complaint for piercing the corporate veil).

Allegations which fail to give notice of the basic events and circumstances of which the plaintiff complains, and contain only a litany of general conclusions are meaningless and, as a matter of law, are insufficient to state a claim. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Dismissal under Rule 12 (b)(6) is proper where there is either a lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990). Here, Plaintiff's Complaint is arguably defective for both reasons but, at a minimum, it is defective for failure to allege sufficient facts as to why Multilogistic should be held liable under a contract to which it is not party.

In *Dolco Investments,* discussed at length above at pages 12-13, Judge Sweet found that plaintiff had failed to state a claim upon which relief could be granted as against defendant GML. 486 F. Supp. 2d at 273. The mere allegation of "domination" of the alleged servient corporation, without any well-pled facts in support of the alleged veil piercing theory, warranted dismissal on the grounds of Rule 12 (b)(6).

So too here, Plaintiff's allegations that Multilogistic is "bound" and "responsible for the actions of New Ocean" are nothing more than legal conclusions masquerading as

MEMORANDUM OF LAW                                                    Page 20 of 23

facts.  Accordingly, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## POINT III

### THE WRIT OF ATTACHMENT CANNOT BE SUSTAINED AND, THEREFORE, THE COMPLAINT MUST BE DISMISSED AS AGAINST MULTILOGISTIC FOR LACK OF PERSONAL JURISDICTION.

In *Deiulemar Compania Di Navigazione S.p.A. v. Dabkomar Bulk Carriers, Ltd.*, No. 05 Civ. 8199, 2005 U.S. Dist. LEXIS 40783, at *11 (S.D.N.Y. December 12, 2005-- Magistrate Judge's Opinion), *adopted by* 2006 U.S. Dist. LEXIS 8331 (S.D.N.Y. February 10, 2006)*,* Magistrate Judge Pitman was faced with circumstances analogous to those here because plaintiff there had failed at a post-attachment hearing to establish that it had a valid *prima facie* admiralty claim based on a guaranty.  The *Deiulemar* Court ruled:

> Because plaintiff cannot prevail on its guarantee claim against Dabkomar AS, it cannot establish a *prima facie* admiralty claim and cannot meet its burden under Admiralty Rule E(4)(f).  The Order of Attachment should, therefore, be vacated.  *In addition, because the attachment is the only basis for the assertion of jurisdiction over Dabkomar AS, its vacatur requires the dismissal of the action as to Dabkomar AS for lack of personal jurisdiction.* (Citations omitted; emphasis Added).

*Id.* at *27-8.

The same result should be reached in this case.  Plaintiff has not alleged any facts under which Multilogistic can be held bound to the terms of an agreement to which it is not a party, nor why it can be held responsible for the actions of a corporate co-defendant with which it has nothing but an arms-length relationship.  The Order of Attachment should, therefore, be vacated, leaving this Court without personal jurisdiction over

MEMORANDUM OF LAW                                    Page 21 of 23

Multilogistic. Accordingly, Plaintiff's Complaint should be dismissed under Rule 12

(b)(2). *See, e.g.*, *Blueye Navigation, Inc. v. Oltenia Navigation, Inc.,* 1995 U.S. Dist. LEXIS

1844, 94 Civ. 1500, 94 Civ. 2653, 1995 WL 66654 at *4 (S.D.N.Y. Feb. 17, 1995) (if *res* is

released in a case based on *quasi in rem jurisdiction*, personal jurisdiction over defendant

is extinguished).

**CONCLUSION**

For all the foregoing reasons, Plaintiff's attachment of the total sum of $7,619.00 of

Defendant Multilogistic's funds should be vacated, garnishee Wachovia Bank should be

ordered to release said funds and the Verified Complaint should be dismissed with

prejudice as against Multilogistic, with attorneys' fees and costs.


Dated:    New York, NY
          August 13, 2007


                          BURKE & PARSONS
                          Attorneys for Defendant
                          MULTILOGISTICS SRL


                          By    s/Michael J. Walsh
                                Michael J. Walsh (MW-6578)
                                100 Park Avenue
                                New York NY  10017-5533
                                (212)354-3800


MEMORANDUM OF LAW                                          Page 22 of 23

To:     Bennett, Giuliano, McDonnell
        & Perrare LLP
        Attn:  William R. Bennett III, Esq.
        Attorneys for Plaintiff
        225 West 34th Street
        Suite 402
        New York, NY  10122

O:\CM\9011_MUL\BP_Doc\0003.doc